LARRY K. PHIPPS, APPELLEE AND CROSS-APPELLANT,
v. SKYVIEW FARMS, INC., A NEBRASKA CORPORATION,
APPELLANT AND CROSS-APPELLEE.

610 N.W. 2d 723

Filed May 19, 2000.    No. S-99-358.

Steve Windrum for appellant.

Katherine R. Hall and, on brief, Frankie J. Moore, of McCarthy, Gale, Moore & Hall, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

Larry K. Phipps brought a breach of contract action against Skyview Farms, Inc. (Skyview), claiming that Skyview breached the terms of a truck/trailer lease agreement. Skyview counterclaimed, asserting that Phipps breached the agreement, resulting in damages to Skyview. The district court for Dawson County found that Skyview breached the agreement, dismissed the counterclaim, and entered a judgment in favor of Phipps in the amount of $8,070.08. Skyview now appeals. We moved this case to our docket pursuant to our power to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. FACTUAL BACKGROUND

Skyview, a corporation based in Gothenburg, Nebraska, is in the business of running semi-trucks throughout the United States and Canada. W. Alan Rickertsen is the owner of Skyview. Phipps owns a tractor and trailer combination (truck) which he uses for hauling commodities over the road. On February 4, 1997, Phipps entered into a truck/trailer lease agreement (agreement) with Skyview. Under the terms of the agreement, Skyview would dispatch loads of freight to Phipps for transportation, and Phipps would furnish his truck for delivering the loads. The agreement was for a term commencing upon the signing of the agreement, which occurred on February 4, and ending on December 31.

The agreement provided that Phipps would be paid "by the load," with Skyview deducting a percentage from the gross receipts as a brokerage fee and compensation for its services. Phipps was required to make an initial escrow deposit of $500 from which amount Skyview could withdraw to satisfy certain liabilities for which Skyview was entitled to reimbursement. Phipps was obligated to conduct a " 'clean operation,' " including "check calls, on time loading, on time delivery, no adverse safety reports, deliveries at correct destinations, all items required under safety procedure, no exceptions noted on delivery receipts and no discourteousness at loading or unloading points."

Phipps was provided with an "Owner/Operator Handbook" (handbook), further detailing the parties' obligations and procedures to be followed. The provisions of the handbook were incorporated into the agreement. The handbook required drivers to keep legal "log books," which are logs detailing times when the driver is sleeping, driving, off duty, or making fuel stops.

On June 20, 1997, Skyview terminated the agreement with Phipps over the telephone after an accident which had occurred on June 19 while Phipps was unloading his truck at a jobsite in Maryland. Rickertsen also sent Phipps a letter dated June 20, 1997, confirming the earlier telephone conversation terminating the agreement due to Phipps' "gross misconduct and safety violations," and effective upon the unloading of Phipps' truck at the Maryland jobsite.

On July 23, 1997, Rickertsen sent a letter to Phipps informing Phipps that Skyview was unable to settle Phipps' account because Phipps had failed to return license plates, permits, and decals that were the property of Skyview. Phipps disputed the amounts deducted from moneys owed to him by Skyview as stated on Skyview's "Statement of Account" for Phipps, including charges for license plates and permits, "Cost for Missed Load," "Early Termination Service Charge," and "Loss of Escrow Deposit." Phipps did not inform Skyview by certified mail of the dispute regarding these settlement computations within 60 days, although such notice was required under the terms of the agreement. Phipps refused to return the license plates, permits, and decals until the dispute regarding these charges was settled.

This dispute led Phipps to file a lawsuit against Skyview on January 7, 1998, claiming that Skyview breached the agreement by its unilateral termination of the agreement on June 20, 1997. Skyview filed an answer, claiming that Skyview properly terminated the agreement pursuant to its terms allowing for termination upon a material breach by Phipps. Skyview also filed a counterclaim for breach of contract based on the June 19, 1997, accident and other alleged breaches by Phipps.

Prior to trial, Phipps filed a motion in limine requesting that the court limit Skyview's introduction of certain evidence, including Occupational Safety and Health Administration (OSHA) documents, a report from the Maryland State Patrol, and any testimony from Rickertsen regarding alleged hearsay statements he received, all concerning the June 19, 1997, accident. The trial court granted the motion. Phipps' objections to this evidence at trial were sustained.

At trial, Phipps testified that on June 19, 1997, he was delivering a sand-like substance to a liquid nitrogen plant in Maryland. The product Phipps was delivering had been purchased by a company called Chemrock. When Phipps arrived at 7:30 a.m., Chemrock representatives told him that they were not ready to receive the load. Phipps did not recall being advised as to a specific unloading time, although Skyview's internal documentation indicates an unloading time of 2 p.m.

Phipps testified that he called Rickertsen and reported that he was angry because his truck was not going to be unloaded. Rickertsen informed Phipps that this was a "demurrage load," meaning Phipps would be paid by the hour while waiting to be unloaded. Chemrock representatives then informed Phipps that they would start unloading and instructed Phipps to unload into a pneumatic tanker. Two Chemrock employees positioned conveyor belts under Phipps' truck and onto the tanker. When Phipps opened one of the storage compartments on his trailer by opening the gate on the underside of the compartment, a large amount of product fell onto the conveyor belt, causing the conveyor belt to stop. While Phipps was trying to get the conveyor running again by pulling on the conveyor's pulley system, his hand became entangled with a belt, causing him to sever the ends of two fingers on his left hand. Before being taken to the hospital, Phipps called Rickertsen and informed him of the accident.

Phipps was able to leave the hospital on the evening of June 19, 1997. The next day, June 20, Phipps called Rickertsen. During this telephone call, Rickertsen informed Phipps the agreement was terminated, effective upon the unloading of the truck. Phipps did not pick up the next load assigned to him, which was 50 miles away from the Maryland jobsite.

On June 21, 1997, Phipps began his return trip from Maryland to his home in Colorado. This was a "deadhead" trip, which means running without a load. On the advice of doctors, Phipps took time off to allow his fingers to heal before beginning to drive again. Three weeks after the agreement with Skyview was terminated, Phipps entered into another truck lease arrangement with GM Trucking.

Rickertsen testified about the events of June 19 and 20, 1997, including the telephone call from Phipps informing Rickertsen of the accident.

Rickertsen claimed he had previously informed Phipps over the telephone of the 2 p.m. unloading time. Rickertsen further testified that later on the morning of the accident he was contacted by both the Maryland State Patrol and the Maryland division of OSHA regarding Phipps' accident, but no action was taken against Skyview by the state patrol or OSHA.

Rickertsen also testified about several incidents which Skyview claimed constituted breaches of the agreement by Phipps, including impatient behavior during telephone calls made to Rickertsen, arriving too early at the Maryland jobsite, carrying a firearm in his truck on one occasion, and instances of failing to properly fill out various types of paperwork, including the logbooks covering the period from June 16 to 23, 1997. Skyview did not receive Phipps' logbook covering this time period until some time after the agreement was terminated. Rickertsen testified that Skyview was unable to find a driver to replace Phipps.

Phipps claimed damages of $12,302.79, consisting of $6,345.08 pursuant to the outstanding settlement sheets for work Phipps performed under the agreement; $1,725 for the cost of the deadhead return trip; and $4,232.71 in lost income for the 3-week period during which he was unemployed after Skyview terminated the agreement. On its counterclaim, Skyview claimed damages in the amount of $2,500 for Phipps' failure to return license plates and decals, and lost profits in the amount of $9,277.08 as a result of being unable to find a replacement driver.

The trial court found that Skyview breached the agreement by unilaterally terminating the agreement on June 20, 1997. The court specifically found that the reasons Rickertsen gave at trial for terminating the agreement were "pretextual" and found that many of the reasons given for terminating the agreement were not known to Skyview at the time the agreement was terminated. The court also found that Phipps substantially performed his obligations and that none of the alleged violations constituted a material breach. The court noted that Phipps' progress reports up to the time of the June 19 accident were generally positive and satisfactory. The court found that Phipps had proved the damages claimed for amounts due on the settlement sheets and the cost of the deadhead trip, but not for the lost income. The court awarded $8,070.08 in damages and dismissed Skyview's counterclaim.

Skyview made a motion for new trial, which was overruled. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Skyview claims, restated and summarized, that the trial court erred in (1) failing to find that Phipps breached the terms of the agreement, activating Skyview's right to terminate the agreement; (2) determining the amount of damages awarded to Phipps, assuming that Skyview breached the agreement; (3) failing to determine and assess damages due to Skyview resulting from Phipps' breach of the agreement; (4) sustaining Phipps' motion in limine; and (5) determining that the OSHA documents, state patrol report, and certain statements regarding the June 19, 1997, accident were inadmissible.

## IV. STANDARD OF REVIEW

[1,2] A suit for damages arising from breach of contract presents an action at law. In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. The appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *General Fiberglass Supply v. Roemer*, 256 Neb. 810, 594 N.W.2d 283 (1999).

■ The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999).

## V. ANALYSIS

### 1. BREACH OF AGREEMENT

■ In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996). The parties in this case do not dispute that a valid contract existed, but Skyview disputes the trial court's findings regarding breach. Skyview claims the trial court erred in finding that it breached

the agreement and in failing to find a material breach by Phipps. Skyview asserts that Phipps committed a material breach, activating Skyview's right to terminate.

The terms of the lease provide that the agreement "may be terminated immediately in the event of a material breach by either party." Thus, in order for Skyview's termination to be proper, Phipps must have committed a material breach prior to termination.

A "breach" is a nonperformance of a duty. *Cavanaugh v. City of Omaha*, 254 Neb. 897, 580 N.W.2d 541 (1998). Whether or not a breach is material and important is a question of degree which must be answered by weighing the consequences of the breach in light of the actual custom of persons in the performance of contracts similar to the one involved in the specific case. *Eliker v. Chief Indus.*, 243 Neb. 275, 498 N.W.2d 564 (1993). Substantial performance may be established as long as any deviations from the contract are relatively minor and unimportant. *VRT, Inc. v. Dutton-Lainson Co.*, 247 Neb. 845, 530 N.W.2d 619 (1995).

The trial court's findings regarding Phipps' substantial performance and Skyview's breach of the agreement were not clearly erroneous. The record supports the trial court's finding that Skyview terminated the agreement as a result of the June 19, 1997, accident, and not because of the other alleged violations.

### (a) Alleged Breaches Occurring Prior to June 19, 1997, Accident

Skyview asserts that Phipps breached the agreement prior to the termination by failing to correctly fill out various paperwork. Skyview claims there were problems with Phipps' logbooks and other paperwork in February and April 1997. However, Rickertsen testified that he discussed this issue with Phipps and that Phipps improved in this area. Further, Skyview had not received any fines as a result of the manner in which Phipps' logbooks were filled out.

Skyview also claims Phipps materially breached the agreement by driving in excess of 70 hours in an 8-day period in February and May 1997. However, Skyview did not terminate

the agreement upon discovery of this information in February and May 1997. Skyview's documentation indicates that Rickertsen discussed this concern with Phipps, and Phipps agreed to work on this problem.

Skyview next claims that Phipps breached the agreement by violating paragraph 5.13, which prohibits drivers from carrying firearms in their trucks. However, Rickertsen testified that upon learning that Phipps had carried a firearm in his truck on one occasion, he simply told Phipps to "leave the darned thing at home." Skyview did not terminate the contract at that time.

Skyview did not terminate the contract upon the occurrence of any of these incidents. All of these alleged breaches occurred prior to the June 19, 1997, accident which resulted in Skyview's termination of the agreement. The record shows that what Skyview now claims are breaches of the agreement were handled, at the time they occurred, by simply discussing the issues with Phipps. Skyview's reactions to these alleged breaches support the trial court's finding that such problems were not considered by Skyview to constitute material breaches of the agreement. The trial court was not clearly erroneous in finding that Skyview's proffered reasons for terminating the agreement were pretextual.

### (b) Alleged Breaches on June 19, 1997

The letter confirming the termination stated that the termination was due to Phipps' "gross misconduct and safety violations." Rickertsen testified that "gross misconduct" referred to Phipps' conduct during the June 19, 1997, unloading. Skyview claims Phipps breached the agreement by being "impatient" and "getting angry" upon being told he could not immediately unload at the Maryland jobsite, claiming this conduct breached paragraph VII of the handbook. Paragraph VII of the handbook provides, "SKYVIEW LEASING expects drivers, to be very polite at all times, courteous to others on and off the road, **and not to complain to any one except Skyview people.**" (Emphasis in original.) Evidence adduced by Skyview of Phipps' impatience consists of the telephone calls Phipps made to Rickertsen in which Phipps was upset about not being able to unload. Skyview did not produce evidence that Phipps

expressed impatience or discourteousness to anyone other than Rickertsen, the owner of Skyview. Under the terms of the handbook, Phipps was complaining to the appropriate person. The trial court was not clearly erroneous in determining that Phipps' conduct did not constitute a breach of the agreement.

Skyview also claims Phipps breached the agreement by failing to make a check call at least 6 hours prior to arriving at the Maryland jobsite. Although the agreement requires making such calls, the trial court was not clearly erroneous in determining that failing to make one such call was not a material breach of the agreement.

Skyview next claims Phipps breached the agreement by arriving earlier than scheduled at the Maryland jobsite. The terms of the agreement provide for "on time delivery." Skyview claims the load was scheduled for a 2 p.m. delivery. However, Phipps claimed he was never advised of this unloading time. Upon his call to Rickertsen, Phipps was informed that this was a demurrage load and that he would be paid for any time he spent waiting. Resolving evidentiary conflicts in favor of Phipps, who is entitled to every reasonable inference deducible from the evidence, we cannot say the trial court was clearly erroneous in finding that Phipps did not breach the agreement by arriving at the jobsite at 7:30 a.m.

Regarding safety violations, Skyview claims Phipps was attempting to unload his truck in an "unauthorized manner" by his actions regarding the conveyor system. Skyview bases this position upon an "unwritten law" in the trucking business that truckers are not supposed to touch equipment belonging to others. However, no provisions of the agreement prohibit the trucker from such activity. Instead, the agreement provides that the trucker is to "properly load, unload, and clean out all trailers," and "furnish drivers and all other necessary labor" for the "loading and unloading" of commodities. In the several pages of the handbook covering loading and unloading procedures, there are no provisions which provide for unloading the truck in a specific manner or which state that the trucker is not to assist in the unloading of the truck.

Skyview next claims that Phipps endangered a Chemrock employee while attempting to restart the conveyor system.

However, there is no evidence of this in the record. Although OHSA and the Maryland State Patrol contacted Rickertsen regarding the accident, no action was taken against Skyview and no evidence was produced to show that Phipps was violating any terms of the agreement by attempting to restart the conveyor belt. The trial court's finding that Skyview failed to show that Phipps breached the agreement by his actions on June 19, 1997, was not clearly erroneous.

(c) Alleged Breaches Occurring After Termination

Many of the alleged breaches by Phipps did not occur until after the agreement was terminated. Skyview claims Phipps' logbooks for the period of June 16 through June 23, 1997, indicate various violations of the agreement. However, Skyview did not receive these logbooks until after terminating the agreement. Rickertsen testified that these logbooks had no bearing on his decision to terminate the agreement.

Skyview further claims Phipps breached the agreement by not picking up the next load 50 miles away from the Maryland jobsite, not returning license plates and decals, and not informing Skyview by certified mail of the dispute regarding the settlement computations within 60 days. However, each of these alleged breaches occurred after the agreement had already been terminated. The trial court was not clearly erroneous in finding that many of the reasons for the termination given at trial could not be said to be material breaches triggering Skyview's right to immediately terminate because they were not known to Skyview at the time of termination.

Skyview relies upon *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993), for the proposition that such "posttermination evidence" may be considered when determining whether termination of a contract is justified by reason of a breach by one of the parties. However, that is clearly not the holding of *Schuessler*. In *Schuessler*, we held that "posttermination evidence is admissible as bearing on the employee's *recovery* in a wrongful discharge suit." (Emphasis supplied.) 243 Neb. at 439, 500 N.W.2d at 540. The language of *Schuessler* clearly demonstrates that we did not intend for posttermination evidence to be used as a justification

for termination of a contract. We stated, "Because posttermination evidence of employee misconduct is necessarily discovered after an employee has been terminated, it can hardly be said to have provided a reason or 'cause' for the termination." *Id.* Posttermination evidence "bears only on the amount of recovery," *id.* at 440, 500 N.W.2d at 540, not on whether a breach by one party justifies the other party's termination of the contract.

Considering the judgment in a light most favorable to Phipps and resolving evidentiary conflicts in his favor, giving him every reasonable inference deducible from the evidence, we conclude that the trial court was not clearly erroneous in finding that the reasons given by Skyview for terminating the agreement were pretextual. The trial court did not err in its determination that Phipps substantially performed his obligations under the contract and that Skyview improperly terminated the agreement.

## 2. PHIPPS' DAMAGES

Skyview claims that even if Skyview breached the agreement, the trial court erred in the amount of damages awarded to Phipps. The trial court found that Phipps had proved damages resulting from the deadhead trip and the amount due on the settlement sheets. However, the court found that Phipps failed to prove lost income, relying on information in Phipps' 1997 income tax return.

In a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position he or she would have occupied if the contract had been performed, that is, to make the injured party whole. *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994). As a general rule, a party injured by a breach of contract is entitled to recover all damages which are reasonably certain and which are naturally expected to follow the breach. *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 502 N.W.2d 444 (1993).

### (a) Charges Appearing on Statement of Account

Phipps set forth a calculation of damages in which he did not include several of the "charges" which Skyview included in its statement of account for Phipps. The trial court awarded damages based on Phipps' calculation of damages. Skyview claims

the trial court erred in not deducting these additional charges from Phipps' damage award.

Skyview claims the $100 charge for "Cost for Missed Load" was properly deducted from any amounts owed to Phipps because under the terms of the agreement, Phipps was liable for any missed load, no matter what the reason. This charge was deducted because Phipps did not pick up the next load assigned to him 50 miles away from the Maryland jobsite. However, the agreement provides that the trucker is liable for "[t]rip interruption" when the trucker "violates this Agreement in such a manner as to fail to complete transportation of commodities in transit." There is no provision regarding failure to pick up the next load. Furthermore, Skyview terminated the agreement upon the unloading of Phipps' truck at the Maryland site. Phipps would be under no obligation to pick up the next load once the agreement was already terminated.

Skyview claims it was proper to charge against Phipps an early termination service charge, costs of license plates and permits, and loss of escrow. The agreement provides for such charges in the section entitled "Rights on early termination." However, the agreement provides for such charges only when the trucker breaches the agreement. In the present case, Skyview breached the agreement. Thus, these are not appropriate charges to be made against Phipps' account.

Skyview also claims it was proper to charge Phipps $2,159.52 for the 1997 total annual costs of license plates and permits, while crediting Phipps' account for a total of $900 that had been deducted from Phipps' earnings on a weekly basis and applied toward the cost of these license plates and permits. This would result in Phipps' being held responsible for $1,259.52 in "unused" license plate and permit costs. The terms of the agreement as set forth in the handbook provide that the trucker is responsible for the unused portion of license plate and permit costs if the trucker terminates the agreement early. In the present case, Skyview terminated early. Thus, the charges for license plates and permits are not appropriate. Because the damages awarded by the trial court for amounts due on the settlement sheets were supported by evidence and bear a reasonable rela-

tionship to the elements of the damages proved, the trial court's action in this respect will not be disturbed on appeal.

### (b) Cost of Deadhead Return Trip

Skyview claims Phipps was not entitled to recover for the cost of the deadhead return trip, claiming that no provision of the agreement provides for the trucker's being compensated for travel expenses upon delivering his last load and returning home. Skyview further asserts that Phipps could not have returned with a load because of the injury to his hand. However, the record shows that Phipps did drive the truck home, even though he was injured. The record indicates that the reason for Phipps' unloaded return trip was Skyview's improper termination of the agreement effective upon unloading at the Maryland jobsite. Phipps' unloaded return trip, resulting in additional expense to Phipps, is reasonably certain and naturally expected to follow Skyview's improper termination of the agreement. The trial court's award of damages for the deadhead return trip is supported by the evidence and bears a reasonable relationship to the elements of the damages proved and thus will not be disturbed on appeal. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999).

### 3. SKYVIEW'S DAMAGES

Skyview claims it was damaged by Phipps' failure to return decals, license plates and permits, and lost revenue due to being unable to find a replacement driver. Because Skyview improperly terminated the agreement, it is not entitled to any damages resulting from not being able to replace Phipps. Regarding Phipps' failure to return the decals and license plates after the termination, paragraph 18.1 of the agreement provides:

> In the event that either party hereto is in breach of this Agreement, the non-breaching party shall be entitled to an action for damages, specific performance, or any other remedy provided by the laws of the State of Nebraska. More specifically, and not by way of limitation, the parties hereto acknowledge that SKYVIEW LEASING has a special property interest in the permits, licenses, applications, and other documents and instruments provided . . . to

TRUCKER, and in the event that TRUCKER shall fail to return such items to SKYVIEW LEASING as provided herein, SKYVIEW LEASING shall be entitled to specific performance requiring the return of such items, or replevin, if that remedy is appropriate, and for money damages . . . suffered by SKYVIEW LEASING for retention by TRUCKER of such items[.]

Paragraph 19.3(c) further provides that "any alleged breach by SKYVIEW LEASING shall not entitle TRUCKER to suspend or avoid any of its obligations hereunder." Thus, Phipps was obligated to return the decals and license plates even though Skyview was the breaching party. Phipps admitted that he did not return the decals and license plates. However, Skyview has failed to show how it was damaged by Phipps' retention of the items.

Skyview claims Phipps retained decals and license plates valued at $2,500. Skyview's statement of account shows costs of license plates and permits totaling $2,159.52. However, Phipps contributed $900 to these costs through weekly deductions from his pay. Had the agreement not been improperly terminated, these weekly deductions would have continued until the license and permit costs were completely reimbursed. Rickertsen acknowledged that the handbook provided that the trucker is responsible for the unused portion of these costs when the trucker terminates early. In this case, Skyview terminated early.

Rickertsen testified that had Phipps returned the items, Skyview would have received a partial refund from the state. However, Skyview would then forward the refund to the trucker. Testimony further indicated that the decals were not reusable and that the license plates themselves were of no use to Skyview. Phipps did not continue to use the license plates after Skyview terminated the agreement. Skyview has failed to prove any damage caused by Phipps' retention of these items.

### 4. EVIDENCE SUBJECT TO MOTION IN LIMINE AND RULED INADMISSIBLE AT TRIAL

Skyview claims the trial court erred in sustaining Phipps' motion in limine regarding OSHA documents, a Maryland State Patrol report, and testimony from Rickertsen concerning a con-

versation with an OSHA official, all relating to the June 19, 1997, accident. Skyview claims the court further erred in ruling these items inadmissible at trial.

Skyview first claims that a motion in limine is only proper in a jury trial and is not proper in a bench trial, citing *Frerichs v. Nebraska Harvestore Sys.*, 226 Neb. 220, 410 N.W.2d 487 (1987). In *Frerichs*, 226 Neb. at 228, 410 N.W.2d at 493, we stated that a motion in limine " 'is a procedural step to prevent prejudicial evidence from reaching the jury,' " and that the purpose of such a motion is " ' "to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself." ' " However, Skyview cites no authority stating that a motion in limine may not be used in a bench trial.

In *Frerichs*, we stated:

" '[A motion in limine] serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial. . . . It is not a ruling on evidence and should not, except on a clear showing, be used to reject evidence. It adds a procedural step to the offer of evidence.' "

226 Neb. at 228, 410 N.W.2d at 493, quoting *Twyford v. Weber*, 220 N.W.2d 919 (Iowa 1974). There is nothing improper about using a motion in limine to raise and point out before trial certain evidentiary rulings the court may be called upon to make during the course of trial, even when there is no jury involved. The district court did not err in granting the motion in limine.

The court's ruling on the motion in limine required Skyview to call witnesses capable of providing proper foundation for the OSHA documents and state patrol report. If such witnesses were not called and proper foundation was not provided, Skyview would not be permitted to introduce the reports into evidence. It is clear from the record that at trial, Skyview did not call any witnesses to lay proper foundation for the admission of the OSHA documents and state patrol report into evidence.

These documents and report contained hearsay and thus were admissible only under an exception to the hearsay rule. Skyview

did not call any witnesses at trial to provide proper foundation for the documents and report to be admitted under an exception to the hearsay rule. Skyview attempted to introduce this evidence only through Rickertsen, who had no personal knowledge of the information contained therein and was not the custodian of the documents or the report. Because proper foundation was not supplied, the trial court did not err in excluding this evidence.

Skyview also claims that the court improperly excluded testimony of Rickertsen regarding a conversation Rickertsen had with an OSHA official. Through an offer of proof, Skyview claimed that in this conversation an OSHA official told Rickertsen that if Phipps was considered an employee of Skyview, Skyview would be "fined big time." The court sustained Phipps' objection to this evidence on hearsay and lack of foundation.

Skyview asserts that this statement was not offered to prove the truth of the matter asserted, but only to show Rickertsen's state of mind in deciding to terminate the agreement. However, the agreement could only be terminated by Skyview upon a material breach by Phipps. Rickertsen's state of mind is not relevant to show whether Phipps materially breached the agreement. The only relevant purpose for which this evidence could have been offered was to show that Phipps engaged in a safety violation for which Skyview could be fined if Phipps was Skyview's employee. The conversation with the OSHA official is hearsay, and Phipps' objection on this ground was properly sustained.

## 5. CROSS-APPEAL

In Phipps' cross-appeal, he claims that the trial court erred in failing to award him damages for lost income for the 3-week period during which he was unemployed before entering the lease with GM Trucking. The trial court determined that Phipps failed to prove these damages because "the income tax return for the Plaintiff for calendar year 1997 (See Exhibit 14) shows that the Plaintiff experienced a net loss for calendar year 1997."

We do not agree that the fact that Phipps experienced a net loss on his income tax return shows that he was not entitled

to recover for loss of income during the 3-week period during which he was unemployed. However, where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000). Phipps testified that he "took some time off" upon his return from the Maryland trip to his home in Colorado. Phipps testified, "The doctors wouldn't let me go back on the road right away, wanted to give my fingers time to heal. In the meantime, I called GM Trucking to find out if I could go back.to them." Phipps further testified that even after receiving a favorable response from GM Trucking, he did not immediately go back to work.

Phipps' testimony indicates that the reason Phipps was not driving during this time period was due to the injury to his fingers, and not due to Skyview's terminating the agreement. Thus, Phipps failed to prove that the damages claimed for loss of income resulted from Skyview's breach. The trial court's denial of these damages, although for a different reason, was proper. A proper result will not be reversed merely because it was reached for the wrong reasons. *Hornig, supra.*

## VI. CONCLUSION

Having considered all assignments of error of both parties and finding them to be without merit, we affirm the judgment of the district court.

AFFIRMED.