Siouxland Ethanol, LLC, a Nebraska limited
liability company, appellee, v. Sebade
Brothers, LLC, a Nebraska limited
liability company, and Rick Sebade,
an individual, appellants.

___ N.W.2d ___

Filed February 27, 2015.    No. S-14-126.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Breach of Contract.** A material breach will excuse the nonbreaching party from its performance of the contract.

4. **Breach of Contract: Words and Phrases.** A material breach is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract.

5. **Breach of Contract.** Whether or not a breach is material and important is a question of degree which must be answered by weighing the consequences of the breach in light of the actual custom of persons in the performance of contracts similar to the one involved in the specific case.

6. **Breach of Contract: Judgments.** Although whether a material breach has occurred is commonly a fact question, in some circumstances, a court may determine the question as a matter of law.

7. **____: ____.** If the materiality question in a breach of contract case admits of only one reasonable answer, then the court must intervene and address what is ordinarily a factual question as a question of law.

8. **Contracts.** A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract.

9. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law.

10. **Summary Judgment: Evidence.** When the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy.

Appeal from the District Court for Dakota County: PAUL J. VAUGHAN, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

David Geier and Stuart B. Mills for appellants.

Brian C. Buescher and Garth Glissman, of Kutak Rock, L.L.P., for appellee.

WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and CASSEL, JJ.

CASSEL, J.

## INTRODUCTION

In this breach of contract action, the buyer failed repeatedly to meet its monthly purchase requirement and the seller sold its unpurchased product to others. The district court determined that the seller was entitled to summary judgment and awarded damages and prejudgment interest.

Upon the buyer's appeal, we conclude that the buyer's breach during the first three quarters of the contract was material and that it excused the seller of its obligation to adjust the buyer's shipments in the fourth quarter. However, the evidence concerning damages presents a genuine issue of material fact as to the market price of the product during each quarter.

We therefore affirm the district court's summary judgment in favor of the seller on the issue of liability, but we reverse the court's judgment for damages and prejudgment interest, and remand the cause for further proceedings.

## BACKGROUND

### CONTRACT

On September 12, 2008, Rick Sebade and Sebade Brothers, LLC (collectively Sebade Brothers), entered into a "Priced Sale Contract" with Siouxland Ethanol, LLC (Siouxland). Sebade Brothers agreed to purchase modified wet distillers grains with solubles (product), which Siouxland manufactured as a byproduct of ethanol production. The contract ran from October 1, 2008, to September 30, 2009. During that time, Sebade Brothers was obligated to order and take delivery of

2,500 tons of product per month, for a total of 30,000 tons. It agreed to pay $80 per ton.

The contract provided Sebade Brothers with a limited authority to vary the amounts purchased. Specifically, it stated, "Buyer may, at its option, adjust the amount of Product delivered during any month by a maximum of 30 Tons either over or under the Monthly Quantity, subject to a maximum adjustment of 30 Tons per quarter for each of the first three quarters during the Delivery Period." Thus, from October 1 to December 31, 2008, it required Sebade Brothers to purchase not less than 7,470 tons nor more than 7,530. The same amounts applied to the first 3 months of 2009 and then to the next 3-month period. Thus, by the end of the third quarter of the contract term, Sebade Brothers could vary the total quantity by no more than 90 tons, plus or minus.

The contract also provided that Siouxland was to adjust Sebade Brothers' fourth-quarter shipments so that by the end of the contract, the total shipments to Sebade Brothers equaled 30,000 tons. The contractual language stated:

> Adjustments to the Monthly Quantity in one quarter shall not affect Buyer[']s option to make adjustments to the Monthly Quantity in subsequent quarters, provided, however, that during the fourth quarter of the Delivery Period, Seller shall adjust Buyer's fourth quarter shipments in such amounts as Seller determines, so that total shipments of Product to Buyer equal to the Total Contract Quantity set forth above by the end of the Delivery Period. In no event shall the total amount of Product shipped exceed the total Contract Quantity.

The contract also contained a provision stating the measure of damages if Sebade Brothers failed to purchase the required amount of product. This provision stated:

> If the total volume of Product order[ed] by Buyer in any quarter is less than [the] contracted volume for that quarter minus 30 Tons, Buyer will be responsible for the difference between the contracted price per ton set forth above and [the] current market price of Product (if less than the contracted price) on the shortfall of Product delivered to Buyer during such quarter.

PERFORMANCE AND BREACH

Sebade Brothers rarely purchased the contractual amount of 2,500 tons of product per month. The following table shows the amounts of product that Sebade Brothers purchased for each month of the contract.

| Month | Tons of Product Bought by Sebade Brothers |
|---|---|
| October 2008 | 1,720.90 |
| November 2008 | 2,530.23 |
| December 2008 | 2,653.46 |
| January 2009 | 2,515.64 |
| February 2009 | 1,694.60 |
| March 2009 | 1,449.67 |
| April 2009 | 2,030.90 |
| May 2009 | 2,166.67 |
| June 2009 | 1,392.06 |
| July 2009 | 1,525.32 |
| August 2009 | 1,079.82 |
| September 2009 | 0.00 |
| TOTAL | 20,759.27 |

There is no dispute that Sebade Brothers purchased only 20,759.27 tons of product, which was 9,240.73 fewer than it was contractually obligated to buy. Without taking into account the contractual provision allowing for a 30-ton deviation each month subject to a maximum adjustment of 30 tons per quarter, Sebade Brothers was 595.41 tons short of its quota the first quarter, 1,840.09 tons short the second quarter, and 1,910.37 tons short the third quarter, for a cumulative shortage prior to the fourth quarter of 4,345.87.

PLEADINGS

Siouxland filed an amended complaint against Sebade Brothers, setting forth a claim for breach of contract. Siouxland alleged that Sebade Brothers' failure to comply with the contract forced Siouxland to sell over 9,000 tons of product at market prices in effect at the time, which prices fell significantly below the price Siouxland was guaranteed by the contract. Siouxland alleged that it suffered over $290,000 in damages.

Sebade Brothers set forth three defenses in its answer. First, it alleged that Siouxland did not give notice of its intention to resell the product. Second, Sebade Brothers alleged that Siouxland did not adjust quantities in the fourth quarter as required and that thus, Siouxland breached its obligation under the Uniform Commercial Code to act in good faith and waived any further claims against Sebade Brothers. Third, Sebade Brothers alleged that Siouxland did not tender delivery in the amount of shortfalls Siouxland alleged and that thus, Sebade Brothers "had no duty to accept or pay."

### Summary Judgment Hearing

Siouxland moved for summary judgment, and the district court held a hearing on the motion. Evidence established that Sebade Brothers typically would call Siouxland 1 to 2 days in advance to ensure sufficient product was available and then would send a truck to pick up the product. Sebade testified that he would not expect Siouxland to arrive with a load of product at Sebade Brothers' feedlots without any prior arrangement.

There is no dispute that Siouxland did not adjust Sebade Brothers' shipments of product in the fourth quarter. But the parties disputed whether Siouxland informed Sebade Brothers that it needed to pick up more product in the last quarter and whether Sebade stated that Sebade Brothers would not accept or pay for unordered product from Siouxland.

### District Court's Judgment

The district court entered summary judgment in favor of Siouxland. The court determined, as a matter of law, that Sebade Brothers materially breached the contract. The court reasoned that after the first three quarters, Sebade Brothers had a shortfall of 4,499.56 tons, which meant that it failed to order and take delivery of $359,964.80 worth of product. This, the court found, was a material breach of the contract. The court also concluded, as a matter of law, that Sebade Brothers' material breach excused Siouxland from performing its obligation to adjust shipments in the fourth quarter. Thus, the court

granted summary judgment in favor of Siouxland on the issue of liability.

The court also granted summary judgment on the issue of damages and prejudgment interest. The court found Siouxland's damages to be $290,201.83. The court determined that Siouxland was entitled to prejudgment interest "'as a matter of right'" and that the interest began running from the dates that Sebade Brothers was obligated to make a payment. After determining the amount for prejudgment interest to be $27,465.74, the court entered judgment of $317,667.57 in favor of Siouxland.

Sebade Brothers timely appealed, and we moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENT OF ERROR

Sebade Brothers assigns that the district court erred in granting summary judgment in favor of Siouxland.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[3]

## ANALYSIS

### Liability

Sebade Brothers argues that a genuine issue of fact existed on its "waiver" defense. It asserts that under the contract,

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015).

[3] *Id*.

Siouxland had the right to deliver additional product during the fourth quarter to make up for earlier deficiencies. According to Sebade Brothers, Siouxland failed to do so, thereby waiving the deficiencies. "Whether a waiver is to be implied from acts or conduct of a party is a question of fact."[4] Here, the contract provided that Siouxland "shall" adjust Sebade Brothers' shipments so that the total shipments equal the total contract amount.

[3] But Siouxland counters that it was excused from adjusting shipments based upon Sebade Brothers' material breach of the contract prior to the fourth quarter. A material breach will excuse the nonbreaching party from its performance of the contract.[5] Thus, a material breach by Sebade Brothers during the first three quarters of the contract would relieve Siouxland of its obligation to adjust Sebade Brothers' shipments of product during the fourth quarter. And if that is the situation, Sebade Brothers' arguments concerning waiver and tender of delivery have no merit. We therefore begin by considering whether we can determine, as a matter of law, that Sebade Brothers materially breached the contract prior to the fourth quarter.

[4,5] "[A] 'material breach' is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract."[6] Whether or not a breach is material and important is a question of degree which must be answered by weighing the consequences of the breach in light of the actual custom of persons in the performance of contracts similar to the one involved in the specific case.[7] On the other hand, substantial

---

[4] 17B C.J.S. *Contracts* § 1041 at 486 (2011).

[5] *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005).

[6] 23 Samuel Williston, A Treatise on the Law of Contracts § 63:3 at 438 (Richard A. Lord ed., 4th ed. 2002).

[7] *Domjan v. Faith Regional Health Servs.*, 273 Neb. 877, 735 N.W.2d 355 (2007).

performance may be established as long as any deviations from the contract are relatively minor and unimportant.[8]

[6,7] Although whether a material breach has occurred is commonly a fact question, in some circumstances, a court may determine the question as a matter of law.

> The determination whether a material breach has occurred is generally a question of fact. Nevertheless, the materiality of a breach of contract is not always a question of fact, even if the issue is disputed; thus, if there is only one reasonable conclusion, a court must address what is ordinarily a factual question as a question of law.[9]

Thus, as a federal circuit court has stated, "[I]f the materiality question in a given case admits of only one reasonable answer . . . , then the court must intervene and address what is ordinarily a factual question as a question of law."[10]

The breaches in this case went to the heart of the agreement. Sebade Brothers failed to order and take delivery of the required monthly allotment of 2,500 tons of product. And Sebade Brothers' failure to meet the 2,500-ton requirement was not a one-time issue; it met the requirement in only 3 of the first 9 months of the contract. Further, the shortfalls were significant. Of those 6 months in which it did not meet the requirement (even considering the permissible 30-ton shortfall), the closest it came was 303.33 tons short, with the largest shortfall being 1,077.94 tons. These are not minor deviations. While the breach did not completely frustrate the entire purpose of the contract, it was so important that it made continued performance by Siouxland virtually pointless.[11]

[8] Sebade Brothers' apparent interpretation of the contract is not reasonable. It seems to contend that even if it ordered nothing during the first three quarters, Siouxland would remain obligated to make all 30,000 tons of product available for

---

[8] *Phipps v. Skyview Farms*, 259 Neb. 492, 610 N.W.2d 723 (2000).

[9] 23 Williston, *supra* note 6, § 63:3 at 440-41.

[10] *Gibson v. City of Cranston*, 37 F.3d 731, 736 (1st Cir. 1994).

[11] See *Gibson, supra* note 10.

Sebade Brothers in the fourth quarter without its approval. A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract.[12] Evidence established that it would not have been possible for Siouxland to ship 9,000 tons of product in 1 day or 30,000 tons in 2 weeks. The contract specifically allowed for a shortfall of up to 30 tons of product in each of the first three quarters; thus, 90 tons is the maximum amount that Siouxland could have needed to adjust Sebade Brothers' total shipments during the fourth quarter. With that understanding in mind, it is not reasonable to expect Siouxland to generate an additional 4,400 tons of product during the final quarter.

We conclude that Sebade Brothers materially breached the contract and that this material breach excused Siouxland's obligation to make adjustments to shipments during the fourth quarter. We affirm the district court's sustaining of Siouxland's motion for summary judgment as to Sebade Brothers' liability for its breach of the contract.

### Damages

Sebade Brothers next argues that summary judgment was not proper due to the existence of questions of fact relevant to Siouxland's losses. We agree.

The contract provided the measure of damages for a failure to purchase the contractually required volume of product. The measure of damages was the difference between the contracted price per ton of $80 and the "current market price of Product (if less than the contracted price) on the shortfall of Product delivered to Buyer during such quarter."

Sebade Brothers claims that Siouxland failed to prove that there was no dispute of material fact regarding the "current market price." To establish its damages under the contract, Siouxland presented the district court with a calculation based on the prices at which Siouxland resold the product on the "spot market" during the months in which Sebade Brothers

---

[12] *Hearst-Argyle Prop. v. Entrex Comm. Servs.*, 279 Neb. 468, 778 N.W.2d 465 (2010).

failed to order and take delivery of 2,500 tons of product. Sebade Brothers challenges Siouxland's evidence of market price, claiming that Siouxland merely "presented evidence of a variety of private sales transactions to many other customers, spread over the period of the contract, and broken down month-by-month."[13]

Siouxland cites other jurisdictions in support of its position that market value may be proved by a resale of the goods at a reasonable time and place. The Supreme Judicial Court of Maine, for example, stated that it found "no difficulty in sustaining the presiding Justice in his use of the resale price as evidence of market values of the property resold."[14] Similarly, the Supreme Court of Washington stated that "the resale price of goods may be considered as appropriate evidence of the market value at the time of tender in determining damages."[15] And in a case where the only evidence as to market value of the goods at the time of the breach was that it was about the same as what the goods ultimately sold for, a U.S. district court in Kansas stated that the market price of the goods was the same as the resale price and noted evidence that the seller obtained the highest possible price for the goods.[16] Although we recognize that there is authority supporting the use of resale price as evidence of market value, as we discuss below, deficiencies in Siouxland's proof prevent us from determining as a matter of law that resale price equaled market price in this case.

[9,10] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents

---

[13] Brief for appellant at 15.

[14] *Dehahn v. Innes*, 356 A.2d 711, 722 (Me. 1976).

[15] *Sprague v. Sumitomo Forestry*, 104 Wash. 2d 751, 759, 709 P.2d 1200, 1205 (1985).

[16] *Sharp Electronics Corp. v. Lodgistix, Inc.*, 802 F. Supp. 370 (D. Kan. 1992).

judgment as a matter of law.[17] But when the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy.[18]

The evidence before us demonstrates a genuine issue of material fact as to the market price for the product, which is a necessary component of the contractual formula for determining damages. The evidence shows many instances of Siouxland's selling product at different prices on the same day, with prices differing as much as $10 a ton. Further, in June 2009, there were numerous days in which Sebade Brothers purchased product on the spot market at a higher price than Siouxland sold product on the same day. On one of those days, Sebade Brothers paid $13 more per ton than Siouxland charged. This evidence presents a genuine issue as to whether the prices at which Siouxland sold product on the spot market were indeed the market price. This evidence might well have been sufficient to enable a fact finder at trial to determine the market prices and, thus, calculate damages with reasonable certainty. But on Siouxland's motion for summary judgment, the district court was not permitted to decide disputed issues of fact. And in determining the amount of damages and prejudgment interest, that is essentially what the court did. Accordingly, the district court erred in awarding damages and prejudgment interest at the summary judgment stage. We therefore reverse in part the court's order and remand the cause for further proceedings.

## CONCLUSION

We conclude that Sebade Brothers' breach of its contract with Siouxland was material and that it relieved Siouxland of any obligation to adjust Sebade Brothers' shipments during the fourth quarter of the contract. However, we conclude that there is a genuine issue of material fact concerning Siouxland's damages under the contract. We therefore affirm the judgment

---

[17] *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014).

[18] *Id*.

of the district court regarding Sebade Brothers' liability for its material breach of the contract, but we reverse the court's award of damages and prejudgment interest, and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

HEAVICAN, C.J., and MILLER-LERMAN, J., not participating.

---

SYNERGY4 ENTERPRISES, INC., A NEBRASKA
CORPORATION, ET AL., APPELLANTS, V.
PINNACLE BANK, APPELLEE.

___ N.W.2d ___

Filed February 27, 2015.    No. S-14-176.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
2. **Statutes: Judgments: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.
3. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
4. **Statutes: Legislature: Intent.** In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

James S. Mitchell, of Law Offices of James S. Mitchell, P.C., and, on brief, Clifford T. Lee for appellants.

Steven D. Davidson, of Baird Holm, L.L.P., for appellee.

Robert J. Hallstrom, of Brandt, Horan, Hallstrom & Stilmock, for amicus curiae Nebraska Bankers Association, Inc.

HEAVICAN, C.J., CONNOLLY, McCORMACK, and CASSEL, JJ.