Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/01/2018 09:09 AM CDT

- 818 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

Robert Thomas, appellant, v.
Kiewit Building Group Inc.,
et al., appellees.
___ N.W.2d ___

Filed April 24, 2018.    No. A-16-968.

1. **Directed Verdict: Evidence: Appeal and Error.** A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. In reviewing that determination, an appellate court gives the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence.
2. **Pleadings.** The purpose of pleadings is to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pleaded.
3. ____. A pleading serves to eliminate from consideration those contentions which have no legal significance and to guide the parties and the court in the conduct of cases.
4. **Negligence: Liability: Proximate Cause.** In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.
5. **Negligence: Contractors and Subcontractors.** A general contractor in possession and control of the premises has a duty to keep the premises

- 819 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

in such condition that they afford a reasonably safe place to work for persons working on or otherwise rightfully on the premises.

6. **Negligence: Liability: Contractors and Subcontractors.** A general contractor in possession and control of the premises is only liable when the subcontractor's employee is injured because the workplace premises were not safe. It is not liable when an employee is injured due to specific actions or inactions involved in the construction process.

7. ____: ____: ____. A possessor of property is not liable for injury to an independent contractor's employee caused by a dangerous condition that arose out of the contractor's work, as distinguished from a condition of the property or a structure on the property.

8. **Trial: Evidence: Appeal and Error.** The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion.

9. **Trial: Evidence: Testimony: Proof.** Demonstrative exhibits are admissible if they supplement the witness' spoken description of the transpired event, clarify some issue in the case, and are more probative than prejudicial.

10. ____: ____: ____: ____. Demonstrative exhibits are inadmissible when they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant or where the exhibit's character is such that its probative value is substantially outweighed by the danger of unfair prejudice.

11. **Trial: Juries: Evidence.** Demonstrative exhibits are defined by the purpose for which they are offered at trial—to aid or assist the jury in understanding the evidence or issues in a case.

12. **Trial: Evidence: Testimony.** Demonstrative exhibits are relevant only because of the assistance they give to the trier of fact in understanding other real, testimonial, and documentary evidence.

13. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Reversed and remanded for further proceedings.

James E. Harris and Britany S. Shotkoski, of Harris & Associates, P.C., L.L.O., for appellant.

Dan H. Ketcham, of Engles, Ketcham, Olson & Keith, P.C., for appellee Kiewit Building Group Inc.

- 820 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

Inbody, Pirtle, and Riedmann, Judges.

Pirtle, Judge.

## INTRODUCTION

Robert Thomas brought a negligence action against Kiewit Building Group Inc. (Kiewit); Architectural Wall Systems Co. (AWS); and Zurich American Insurance Co., AWS' workers' compensation insurance carrier. The action arises out of an injury Thomas sustained while working for AWS on the construction of a building for TD Ameritrade in Omaha, Nebraska. Kiewit was the general contractor for the project. At the close of Thomas' case, the district court for Douglas County sustained Kiewit's motion for directed verdict. Based on the reasons that follow, we reverse, and remand for further proceedings.

## BACKGROUND

Thomas brought this negligence action against Kiewit, AWS, and Zurich American Insurance Co. based on injuries he sustained on February 20, 2012, when he slipped and fell at the TD Ameritrade jobsite. Thomas has been paid workers' compensation benefits and therefore, as provided under Neb. Rev. Stat. § 48-118 (Reissue 2010), AWS and Zurich American Insurance Co. were named as defendants for workers' compensation subrogation purposes only.

On February 20, 2012, Thomas was working in the course and scope of his employment as an ironworker with AWS on the 12th floor, which was the top floor, of the TD Ameritrade building. The 12th floor was not yet enclosed, and the floor was exposed to the elements, including ice, snow, and frost. Additionally, snow and ice would melt on the roof above, drip down and puddle on the 12th floor, and refreeze. This occurred even on days when there was no precipitation. The concrete floor would become slick as a result of the snow and ice, making the floor dangerous. Sand was spread on the icy areas to make the floor safer. Thomas was injured when he slipped and fell on sand that remained on the floor after it was dry.

- 821 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

Thomas alleges that Kiewit was negligent in failing to remove the sand after the floor was dry, creating a slippery and dangerous surface.

At the time Thomas fell, he and Perry Schafer, another AWS employee, were carrying a metal sheet of siding that was 26 to 28 feet long and 3 feet wide. Before the accident happened, Thomas and Schafer had made 7 to 10 trips carrying metal sheets and had taken the same path each time. Thomas testified that he did not think there was a risk of falling, because he had walked the route safely numerous times. They also had been carrying the same sheets of siding on the job for a couple days before the accident, carrying about 20 sheets each day. Due to the size of the sheets, they had to be carried one at a time by two workers. AWS was going to install the metal sheets on the exterior of the building, so Thomas and Schafer were carrying the sheets to the outside walkway of the building.

On the day of the accident, there were several "trades" working on the 12th floor with AWS, including electricians, heating and air conditioning installers, and plumbers, all of whom had materials stacked on the floor. Because of the materials stacked up in various places and due to the length of the sheets they were carrying, Thomas and Schafer had to "zigzag through everything." Thomas testified that he and Schafer preplanned the route they would take to carry the sheets before starting the day. Schafer and Thomas chose the route they used, and nobody else instructed them on the path to take.

When Thomas fell, Schafer was the lead person carrying the metal sheet. Their route required them to step up onto a raised concrete area designed for an air-handling unit. This required them to each step up onto this pad and then step back down as they carried the metal sheet. Schafer testified that he and Thomas had done this several times that day without any problems. Thomas stated that when they would carry the metal sheets, he felt like he was somewhat pulled by Schafer, who was the lead person. However, Thomas testified that he was

- 822 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

confident about carrying the sheets, because he had done it numerous times and did not think there was any risk.

When Thomas fell, Schafer had gone about 10 or 15 steps past the raised pad and Thomas was stepping off the raised pad. When he stepped off, "[his] feet just went out from under [him]." Schafer testified that there was sand on the concrete where Thomas fell and that it was placed there on a different day due to icy conditions. Schafer testified that there was not very much sand and that it was spread out. He testified he did not feel it was necessary to give Thomas a warning about the sand because it was visible. Schafer testified that he and Thomas continued to work without removing the sand. Schafer testified that if they thought the sand on the floor was an issue, they could have done something about it. Thomas stated that he resumed working shortly after he fell, walking the same route with the sand still present.

John Dahir was Kiewit's safety supervisor. His job was to manage Kiewit's safety programs and ensure they complied with Occupational Safety and Health Administration (OSHA) regulations, state law, and Kiewit's safety rules. He additionally would make sure that subcontractors followed their own safety rules. He testified that Kiewit had responsibility overall for safety on the TD Ameritrade jobsite, but that the subcontractors per contract were responsible for their own safety as well. Dahir testified that Kiewit did walk-throughs of different areas throughout each day and took photographs to document inspections and to show the subcontractors any deficiencies that were found so they could be corrected. He testified about one occasion where he identified slick floors from ice and snow as a safety issue on the job and took photographs of this condition. On one of the photographs, he noted, "Slick conditions were addressed with the group that we [Kiewit] are sanding the main walk paths and that . . . they are responsible to prep their [work areas] with sand if they are not in the main walk paths that have not been sanded." He explained that Kiewit took care of the main walking paths and

- 823 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

that the subcontractors were "responsible to prep their own work areas to make it work ready," which included putting down sand if necessary. Dahir testified that the area where the accident occurred was in AWS' work area. He testified that it is the responsibility of the contractor who spreads the sand to clean it up after it is no longer needed. Dahir also stated that everyone on the site was responsible for unsafe conditions and had the authority to correct an unsafe act or condition. Dahir further testified that the conditions on the 12th floor "varied from day-to-day, and hour-by-hour" because of the ice and snow.

Dahir testified that in his opinion, the sand on the dry floor was not a hazard. He based his opinion on the fact that the sand was put down as a safety measure to prevent someone from slipping based on the icy conditions they were dealing with on the 12th floor. He testified that he has also walked where there was sand on dry concrete and that he did not consider the floor to be a slip hazard. Dahir testified that there was no OSHA violation with respect to Thomas' fall and that OSHA has never recognized sand used to prevent slip and falls in outside conditions to be a hazardous condition.

Keith Vidal, a consulting safety engineer, also testified that snow and ice are recognized hazards and that putting sand down is a reasonable safety measure to reduce the risk of falling on snow and ice. Vidal testified that sand in and of itself is a recognized hazard, but not a hazard recognized by OSHA.

Schafer testified that when ice was on the concrete floor, it was a dangerous condition, and that sand was put down to make the floor condition less dangerous. He testified that when he saw ice on the floor, he would report it to his foreman. Schafer testified that when sand remained on dry concrete, it made the floor slick, but that he did not recall ever reporting sand on the floor to his foreman as a dangerous condition. He stated that he knew to be careful when walking on sand on dry concrete and that he and Thomas specifically

- 824 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

talked about being careful when carrying the sheets because of the sand on the floor.

Reagan Wheatly, Thomas' foreman, testified that all AWS employees are responsible for safety in their own jobs and that they are trained in how to protect themselves from slips and falls. Specifically, AWS employees are told to wear proper boots, preplan their walking path, and look for hazards. Wheatly testified that the AWS employees were to be aware of anything on the ground in their path and that they were expected to do something about anything they considered a danger. They were responsible "to keep [their] path clear."

Wheatly testified that the floors were never slick or dangerous due to sand. He did not consider sand on the ground to be a hazard. He stated that it was only the ice that concerned him and was a problem. He testified that the sand reduced the dangers of the ice and improved worker safety. Wheatly stated that there was sand available for AWS workers to put down if there was ice on the floor and that it was up to each subcontractor to decide whether to put sand down in their work areas. Wheatly also testified that the conditions on the floor were always changing due to the various subcontractors who worked on the floor, as well as the fact that the floor was exposed to outdoor conditions.

Wheatly testified that he never experienced any problems walking on the route that Thomas and Schafer used and that he never thought there was a hazard because of sand on the ground. He also testified that neither Thomas nor Schafer ever reported that the sand was a hazard. Wheatly testified that he had never been trained that sand is considered debris or a safety hazard. After Thomas fell, Wheatly did not think it was necessary to remove the sand where Thomas fell to make it safer to walk. He also testified that Kiewit did not do anything to cause Thomas' accident.

Thomas testified that Kiewit laborers made it safe for the workers by keeping walkways clear. Thomas had seen Kiewit laborers putting sand down in the main walkways 2 weeks

- 825 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

before the incident. Thomas testified that he did not fall in a main walkway and that he does not know who put sand down in the area where he fell. He did remember a meeting where AWS employees were told that they were responsible for spreading sand in their work area.

Thomas testified that he knew sand was present where he fell and that he could see it. Thomas never reported the sand on the floor as an unsafe condition, because in his opinion, the sand was not unsafe. He testified that he has encountered sand on other construction jobs. Thomas admitted that Kiewit would not be on notice of the sand creating a hazard if he and other AWS employees did not report a problem. Thomas testified that sand on a dry floor made it slick, but that it did not stop him and his coworkers from working—they just had "to pay some special attention" when walking. He also testified that he was responsible for his own safety. Thomas admitted that he was trained to report unsafe conditions and that he knew he was not required to work if he felt unsafe.

At the close of Thomas' case, Kiewit made a motion for a directed verdict, which the trial court sustained. The trial court entered an order dismissing Thomas' action, as well as all pending cross-claims and subrogation interests.

## ASSIGNMENTS OF ERROR

Thomas assigns that the trial court erred in (1) granting Kiewit's motion for directed verdict; (2) finding that Kiewit did not owe him, as an employee of independent contractor AWS, a duty to provide a safe place to work; (3) applying the general rule that one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the independent contractor; (4) finding that Kiewit as general contractor did not have possession and control of the premises; (5) failing to recognize and apply the rule that a general contractor in possession and control of premises has a duty to provide a safe place to work; (6) failing to permit him to frame the issues as he chose; (7) refusing to admit

- 826 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

exhibits 41 and 48 into evidence as demonstrative exhibits; and (8) failing to take judicial notice of an OSHA regulation, specifically 29 U.S.C. § 654(a)(1) (2012).

## STANDARD OF REVIEW

[1] A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. In reviewing that determination, we give the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence. *Cohan v. Medical Imaging Consultants*, 297 Neb. 111, 900 N.W.2d 732 (2017), *opinion modified on denial of rehearing* 297 Neb. 568, 902 N.W.2d 98.

## ANALYSIS

Thomas first assigns that the trial court erred in granting Kiewit's motion for directed verdict. His next five assignments of error all relate to the court's findings in regard to the directed verdict. Accordingly, we address the first six assignments of error together.

Thomas pled this case as a premises liability case. Specifically, in his amended complaint, he alleged that Kiewit, as the general contractor in possession and control of the construction site, had a duty to provide a safe place to work and to keep the premises reasonably safe for workers on the construction site, and a further duty to protect and/or warn workers against dangerous conditions on the construction premises. Thomas further alleged that Kiewit created and knew of the dangerous condition resulting from slippery, sandy floors and that Kiewit knew or should have known that the dangerous condition involved an unreasonable risk of harm to workers who either would not discover or realize the danger or would fail to protect themselves against such danger. The amended complaint alleges that Kiewit was negligent in one or more of the following ways: (1) failing to provide a safe place to work

- 827 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

by not following "good housekeeping measures" as required under the Kiewit safety plan, OSHA safety regulations, and industry safety customs and rules; (2) failing to timely clean up the sand, thereby creating a dangerous condition on the premises; (3) failing to use reasonable care to protect Thomas against dangerous conditions on the premises; (4) failing to warn Thomas of the existence of a dangerous condition on the premises; and (5) failing to use reasonable care in maintaining the subject premises in a safe condition for the protection of workers.

Although Thomas pled and proceeded with this case based on a theory of premises liability, the trial court viewed it otherwise. When considering Kiewit's motion for a directed verdict, the court was swayed by Kiewit's argument that premises liability did not apply to a claim for injuries sustained by a subcontractor's employee against the general contractor of a construction project.

Kiewit made its motion for directed verdict at the close of Thomas' case in chief. It argued that a directed verdict should be granted in its favor because Kiewit, as a general contractor, was not liable for physical harm to a subcontractor's employee and because Thomas had failed to prove that any of the exceptions to the rule were applicable, specifically that Kiewit had control over AWS' work or control over the area where Thomas was injured. Thomas argued he presented evidence to show that Kiewit had possession and control over the premises and that therefore, Kiewit had a duty to provide a safe place to work for an independent contractor's employees. After both parties argued their respective positions, the trial court stated this was not a premises liability case, notwithstanding how it had been pled by Thomas. Rather, it analyzed the case under the general rule of imposing vicarious liability upon a general contractor for injuries arising out of the negligence of its subcontractor. Under that theory, the court determined that Kiewit did not have possession and control of the area in which Thomas was injured nor did it have actual

- 828 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

constructive knowledge of the danger and therefore was not liable for Thomas' injuries. As a result, the court found that Kiewit did not owe a duty of care to Thomas under the particular facts of this case as a matter of law, thereby granting Kiewit's motion and dismissing all cross-claims and subrogation interests.

[2,3] Thomas contends that the trial court essentially amended his pleadings when it rejected his premises liability theory of the case. The purpose of pleadings is to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pleaded. *Big Crow v. City of Rushville*, 266 Neb. 750, 669 N.W.2d 63 (2003). A pleading serves to eliminate from consideration those contentions which have no legal significance and to guide the parties and the court in the conduct of cases. *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998).

We conclude that the trial court erred in failing to decide the motion for directed verdict on the theory upon which the case was pled. Thomas pled the case based on premises liability, and the court should have decided the case on that theory, rather than adopting a different theory. See *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012) (applying premises liability theory to injured subcontractor's employee and holding that independent contractor is business invitee to whom possessor of land owes duty to protect against certain dangers). We further conclude, as discussed below, that Thomas' evidence was sufficient to create a question for the jury as to Kiewit's liability and that thus, the motion for directed verdict should have been denied.

[4] In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an

- 829 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor. *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016).

[5] The Nebraska Supreme Court has recognized that a general contractor in possession and control of the premises has a duty to keep the premises in such condition that they afford a reasonably safe place to work for persons working on or otherwise rightfully on the premises. See *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981). See, also, *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014) (one in possession and control of premises has duty to provide safe place to work for independent contractor's employees).

Thomas presented evidence from which the trier of fact could have determined that Kiewit, as the general contractor, maintained possession and control of the premises and therefore had a duty to provide a safe place to work for Thomas, an employee of independent contractor AWS. Dahir testified that Kiewit had responsibility overall for safety on the TD Ameritrade jobsite. He testified that Kiewit was responsible for initiating, maintaining, and supervising all safety precautions. Dahir testified that Kiewit did walk-throughs of different areas throughout the jobsite each day and took photographs to document inspections and to show the subcontractors any deficiencies that were found so they could be corrected.

Wheatly also testified that Kiewit, as the general contractor, had to provide a safe place to work free of recognized hazards, which includes safe walking surfaces free of those hazards. Thomas testified that Kiewit laborers kept walkways clear and picked up debris left behind. Another employee for

- 830 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

AWS testified that he believed it was Kiewit's responsibility to keep the jobsite clean and to make sure it was safe "[d]ay in and day out."

There was evidence that Kiewit took care of the main walking paths and that the subcontractors were responsible for their own work areas, which included putting sand down on ice when necessary. Dahir testified that it was the responsibility of the contractor who spread the sand to clean it up after it was no longer needed. The evidence was conflicting as to who put the sand down where Thomas fell. There was also evidence that Kiewit cleaned up the sand after Thomas fell.

Wheatley testified that sand was available to AWS workers to use in their work areas. However, he testified that he never put sand down and never instructed the AWS workers to do so either. He also testified that he would expect Kiewit to sweep up sand on the floor that is no longer necessary.

Schafer testified that Kiewit would have put the sand down in the place where Thomas fell. He did not see anyone from Kiewit put it in the exact place where Thomas fell, but he saw them spreading it in other areas. He testified that the sand was not put down on the day Thomas fell, but, rather, it had been put down on a different day due to icy conditions. He testified that Kiewit laborers were the only ones who spread sand. Schafer also testified that he had seen Kiewit laborers pumping puddles of water off the floor. He testified that AWS workers did not put down sand because it was outside their scope of work. He testified that he personally did not put down sand because he was a union ironworker. Schafer also testified that Kiewit laborers cleaned up the sand where Thomas fell. Thomas testified that he saw Kiewit laborers putting down sand in the main walkways 2 weeks before his accident. He did not know who put the sand down in the area where he fell.

[6,7] In addition to the evidence that Kiewit had possession and control of the premises, and therefore a duty to provide a safe place to work, Thomas presented evidence

- 831 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

from which the trier of fact could conclude that such duty was breached because the sand on the dry concrete made the workplace unsafe. The Nebraska Supreme Court has held that a general contractor in possession and control of the premises is only liable when the subcontractor's employee is injured because the workplace premises were not safe. See *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014). It is not liable when an employee is injured due to specific actions or inactions involved in the construction process. *Id.* Similarly, a possessor of property is not liable for injury to an independent contractor's employee caused by a dangerous condition that arose out of the contractor's work, as distinguished from a condition of the property or a structure on the property. *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012).

Thomas alleged that there was something unsafe about the workplace premises, i.e., the sand on the dry concrete. The evidence shows that the concrete on the 12th floor would often have ice and snow on it, which made it slick. Sand was often put on the ice to make it less slick. Dahir testified that sand was put down to improve safety and prevent workers from slipping on icy conditions. Dahir testified that the sand on the dry floor was not a hazard. Schafer agreed that when sand was put on the ice, it made the floor less dangerous. However, Schafer also testified that sand on the dry concrete floor created a slick surface, making it dangerous to walk on. Schafer testified that he had slid on an area where there was sand on dry concrete. He stated that he knew to be careful when walking on sand on dry concrete and that he and Thomas specifically talked about being careful when carrying the sheets of siding because of the sand on the floor. Thomas also testified that sand on dry concrete made the floor slick and made it necessary to pay special attention when walking over it.

Giving Thomas, as the nonmoving party, the benefit of every controverted fact and all reasonable inferences from the evidence, we conclude that Thomas presented sufficient

- 832 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

evidence to create a question of fact as to Kiewit's liability. Thus, the trial court erred in granting Kiewit's motion for directed verdict.

[8-12] Thomas also assigns that the trial court erred in refusing to admit exhibits 41 and 48 into evidence as demonstrative exhibits. The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion. *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011). "'[D]emonstrative exhibits are admissible if they supplement the witness' spoken description of the transpired event, clarify some issue in the case, and are more probative than prejudicial.'" *State v. Pangborn*, 286 Neb. 363, 369-70, 836 N.W.2d 790, 797 (2013), quoting *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997). Conversely, "'[d]emonstrative exhibits are inadmissible when they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant, or where the exhibit's character is such that its probative value is substantially outweighed by the danger of unfair prejudice.'" *Id.* at 370, 836 N.W.2d at 797. Demonstrative exhibits are defined by the purpose for which they are offered at trial—to aid or assist the jury in understanding the evidence or issues in a case. *State v. Pangborn, supra.* They are relevant only because of the assistance they give to the trier of fact in understanding other real, testimonial, and documentary evidence. *Id.*

Exhibit 41 is a computer-generated depiction of Thomas' accident, showing him stepping off the raised pad onto the floor and falling. It was presented to Dr. John Hain during his deposition testimony to assist him in explaining the "mechanism of injury" in this case. No objection was made in regard to exhibit 41 during Hain's deposition.

At trial, the exhibit was offered into evidence before Hain's video deposition was played for the jury. Kiewit objected to the admission of the exhibit based on foundation. The parties

- 833 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

discussed the fact that Hain's deposition had not yet been played for the jury, and there was discussion about whether the court should wait to rule on the admissibility of exhibit 41 until after Hain's testimony. The court decided to rule at that point, and it sustained Kiewit's foundation objection. Hain's video deposition was subsequently played for the jury.

We conclude that the court properly sustained Kiewit's foundation objection at the time exhibit 41 was offered into evidence. Hain was asked about the exhibit during his deposition testimony, yet the exhibit was offered before Hain's deposition was played for the jury. Thomas did not reoffer the exhibit into evidence after Hain's deposition was played for the jury or at any time later in the trial. Accordingly, we conclude that the court did not abuse its discretion in failing to admit exhibit 41 into evidence.

[13] Exhibit 48 is a chart which showed the results of testing performed by Vidal, the consulting safety engineer, in which he used a tribometer to measure the slip resistance on various surfaces with and without sand. Although the chart was not identified as exhibit 48 during Vidal's testimony, he used it during his testimony without objection, explaining his findings while the exhibit was being shown to the jury. When Thomas offered the exhibit at a later point in trial, Kiewit objected based on foundation and hearsay, as well as on the ground that it was more prejudicial than probative. After some discussion between the court and the parties regarding demonstrative evidence, the court reserved ruling on exhibit 48. The record does not show that the court ever subsequently ruled on the admissibility of exhibit 48. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Walters v. Sporer*, 298 Neb. 536, 905 N.W.2d 70 (2017). Because the trial court did not rule on the admissibility of exhibit 48, we do not consider Thomas' argument on appeal.

Finally, Thomas assigns that the court erred in failing to take judicial notice of an OSHA regulation, specifically 29

- 834 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
THOMAS v. KIEWIT BLDG. GROUP
Cite as 25 Neb. App. 818

U.S.C. § 654(a)(1), the general duty clause. Kiewit objected, arguing that it was irrelevant because there was no indication in the evidence of an OSHA charge or violation. The court sustained Kiewit's objection, stating that the regulation was not relevant and would confuse the jury. Based on our review of the record, we agree. Thomas' final assignment of error is without merit.

## CONCLUSION

Based on the reasons stated above, we conclude that the district court erred in sustaining Kiewit's motion for directed verdict. Accordingly, the order of the district court is reversed and the matter is remanded for further proceedings.

Reversed and remanded for further proceedings.