Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/11/2020 08:07 AM CST

Thomas L. Buresh, appellant, v.
Craig Reinke, appellee.

___ N.W.2d ___

Filed February 11, 2020.    No. A-19-239.

1. **Summary Judgment.** Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.
2. \_\_\_\_. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
3. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.
4. **Summary Judgment: Proof.** A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law.
5. **Summary Judgment: Evidence.** When the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy.
6. **Trial: Evidence.** Where reasonable minds could draw different conclusions from the facts presented, such presents a triable issue of material fact.
7. **Negligence: Liability: Proximate Cause.** In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if

the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.

8. **Negligence: Contractors and Subcontractors.** A general contractor in possession and control of the premises has a duty to keep the premises in such condition that they afford a reasonably safe place to work for persons working on or otherwise rightfully on the premises.

9. **Negligence.** Duty is a question of whether a defendant is under any obligation for the benefit of a particular plaintiff; in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.

10. ____. The question of whether a duty exists at all is a question of law.

11. **Negligence: Expert Witnesses.** When the conduct in question involves specialized knowledge, skill, or training, expert testimony may be helpful or even necessary to a determination of what the standard of care requires under particular circumstances.

12. **Negligence.** Once a court determines that a duty is owed by one party to another, it becomes necessary to define the scope and extent of the duty. In other words, the standard of care must be ascertained. The standard of care is typically general and objective and is often stated as the reasonably prudent person standard, or some variation thereof, such as what a reasonable person of ordinary prudence would have done in the same or similar circumstances.

13. ____. Several factors relate to whether a possessor has breached a duty to use reasonable care. These include (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

14. **Negligence: Invitor-Invitee: Licensee: Contractors and Subcontractors.** After *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), whether a possessor of land has breached a duty

to use reasonable care to protect lawful visitors is determined under the same test for both licensees and invitees, which includes independent contractors.

15. **Negligence: Invitor-Invitee: Contractors and Subcontractors.** An independent contractor is a business invitee, to whom a possessor owes a duty to protect against dangers it either knows of or could have discovered with reasonable care.

16. **Negligence: Liability: Contractors and Subcontractors.** A possessor of property is not liable for injury to an independent contractor's employee caused by a dangerous condition that arose out of the contractor's work, as distinguished from a condition of the property or a structure on the property.

17. **Negligence: Contractors and Subcontractors.** A general contractor in control of the premises where work performance under a contract with the owner is being carried out owes a duty to persons rightfully on the premises to keep the premises in a reasonably safe condition while the contract is in the course of performance.

18. **Negligence: Liability: Contractors and Subcontractors.** A general contractor in possession and control of the premises is only liable when the subcontractor's employee is injured because the workplace premises were not safe. It is not liable when an employee is injured due to specific actions or inactions involved in the construction process.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Reversed and remanded for further proceedings.

James R. Welsh, of Welsh & Welsh, P.C., L.L.O., and Lyle J. Koenig, of Koenig Law Firm, for appellant.

Douglas L. Phillips and Clifton J. Kephart, of Klass Law Firm, L.L.P., for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Thomas L. Buresh was injured while he was doing electrical work as a subcontractor in the basement of a home construction project; part of the home's structure collapsed, and a piece of lumber struck Buresh. He sued the homeowner, as

well as the general contractor for the project, Craig Reinke. The homeowner and Reinke each filed third-party complaints against Tyler Harms, the subcontractor who they alleged failed to properly brace or secure the portion of the home that Buresh claimed had collapsed on him. The Douglas County District Court granted motions for summary judgment filed by the homeowner and Harms, and the action was dismissed as to those parties. Thereafter, Reinke moved for and was granted summary judgment in his favor; Buresh's complaint was dismissed.

Buresh appeals only from the order granting summary judgment in favor of Reinke. Because we conclude there was sufficient evidence to overcome Reinke's summary judgment motion, we reverse the order and remand the cause for further proceedings on Buresh's premises liability claim against Reinke.

## BACKGROUND

In October 2016, Buresh filed a complaint against the homeowner and Reinke, claiming that in October 2012, the homeowner was building a home in Davenport, Nebraska, and that Reinke was hired as the primary contractor. Buresh was hired to do electrical work. On October 18, 2012, at about 10:30 a.m., the home was in a "dangerous condition," because it was only partially constructed, had been "framed, but not sheeted," and was "not braced or secured to prevent collapse." It was a "windy day." Buresh was working in the basement. He heard a "pop" and then saw the "structure" coming down on him (other parts of the record suggest the structure that hit Buresh may have been a "two-by-four, approximately five feet long," that "could have been a piece of a truss or a piece of a wall"). It landed across his right shoulder, causing him to fall into a pile of sand and injure his left hand.

Buresh alleged that the homeowner and Reinke were in control of the work and had to use reasonable care to maintain the premises in a safe condition for those on it. Buresh

asserted that they were or should have been aware of the "dangerous condition" of the home at the time of the incident. Buresh claimed that the homeowner and Reinke breached their duty to exercise reasonable care to "maintain the building in a safe condition." Buresh alleged that he suffered several injuries that were the direct and proximate result of the claimed breaches. As a direct result of his injuries, Buresh claimed he had suffered and would continue to suffer a variety of damages.

The homeowner and Reinke each filed third-party complaints against Harms, generally alleging that if Buresh proved negligence, it would have been Harms' negligence that proximately caused the alleged collapse and Buresh's alleged injuries.

In May 2017, the homeowner filed a motion for summary judgment, which the district court granted in November. The court concluded that by virtue of Reinke's oral agreement to act as the general contractor, responsibilities to control the premises and people working there were Reinke's alone. Buresh's complaint as to the homeowner was dismissed. Buresh does not assign error as to this order.

In March 2018, Harms filed a motion for summary judgment as to Reinke's third-party complaint against him. The district court entered an order in May, concluding there was no evidence that the trusses were negligently braced or installed, that the installation was in violation of the standard of care, or that any negligence of Harms was the proximate cause of the failure of the trusses. Harms' motion for summary judgment was granted, and Reinke's third-party complaint against Harms was dismissed. Buresh does not assign error as to this order.

In October 2018, Reinke filed a motion for summary judgment. In his "Statement of Undisputed Facts," he asserted that there was no genuine issue with respect to the material fact that the "only evidence in the record with respect to the applicable standard of care" was that (1) Harms constructed the trusses in the same fashion he has always done and they were

braced in accordance with industry standards (citing Harms'
deposition), (2) Reinke did not know of anything Harms or
his crew did to cause the failure of the truss system (citing
Reinke's deposition), and (3) Reinke believed the trusses were
properly installed and secured (citing Reinke's deposition).
Buresh disputed Reinke's "Statement of Undisputed Facts" and
set forth a statement of facts in opposition to Reinke's motion
for summary judgment.

The hearing on Reinke's summary judgment motion took
place in December 2018. At Reinke's request, the district court
said it would consider three exhibits received into evidence at
prior hearings: Reinke's deposition, Harms' deposition, and
the homeowner's answer. Buresh reoffered his complaint and
Reinke's deposition and then offered Buresh's affidavit; all
exhibits were received into evidence.

According to Reinke's deposition testimony, on October 18,
2012, the walls of the first floor were sheeted but there was
no sheeting on the roof. The structure had been braced with
"diagonal and in-line bracing to hold the trusses up straight
and in place." Reinke said that roughly 50 trusses were going
to be in the roof of the house and that 60 percent of those 50
trusses were in place at the time of the accident. Reinke's and
Harms' testimony indicated that the trusses that were in place
had been set up a week prior to October 18. Reinke testified
that it was "[e]xtremely windy" the day of and the day before
the accident. Reinke and his brother were at the site the day
before the accident, and they "looked at the bracing." Reinke
was "probably" sure he "added some to it." Reinke determined
"it was sound and nothing was moving." Reinke assumed
the building collapsed from the wind—that the bracing was
"inadequate for maybe the winds that blew, but I don't — I
can't say that for sure. I think it was adequate." He acknowl-
edged he could have "put up more bracing" and that it was
his responsibility. When asked if it ever occurred to Reinke
that the framework could collapse and fall into the basement,
Reinke responded, "I guess I am sure it's in the back of my

mind. All of those things play into a contractor's thought process; so I'd say yes."

In his affidavit, Buresh claimed that the trusses had not been braced and that no sheeting had been put on the structure. Buresh had been around construction sites for many years, and in his experience, after trusses are erected, they are braced and sheeting is placed on them immediately. He said that on October 18, 2012, he went to the construction site at the "specific insistence" of Reinke, "having previously voiced concern to Reinke" about working in "extremely windy" conditions. Reinke "guess[ed]" that he directed Buresh that he needed to be at the worksite on October 18. But Reinke said that at no time did Buresh voice to him a concern about the high winds or the safety of being in the house.

During the hearing on Reinke's summary judgment motion, Reinke argued that Buresh had not offered evidence of Reinke's required standard of care. The district court indicated it did not find an opinion in the record that "the industry requires that [trusses be] immediately sheeted and had they been immediately sheeted the accident would not have happened." Buresh argued there was a material issue of fact in dispute about whether Reinke should have had installation of sheeting or more bracing because the day before the incident "[Reinke] and his brother looked at the bracing and . . . [Reinke] said he thought it might be inadequate, and they did nothing." Buresh claimed that Reinke had a duty to add bracing or to do "something," notwithstanding the "standard of the industry." However, Buresh did not know that there was "any evidence to that effect" to show that had Reinke done that, then the incident would not have occurred.

The district court issued its order on January 10, 2019. The court noted that the parties did not dispute Reinke's control over the workplace and that he had a duty to use ordinary and reasonable care to avoid injuries to subcontractors working on the premises. The court pointed to Harms' and Reinke's testimony that the trusses were erected and braced to industry

standards and were properly installed and secured, but were "knocked down by extremely high winds." The court stated that the question in the case was whether there were genuine issues of material fact with respect to the last two elements of Buresh's negligence claim: breach of duty and proximate cause.

The district court concluded that Buresh failed "to produce any evidence as to the applicable standard of care for carpenters or framers constructing and bracing trusses in a building." The court stated that the only evidence regarding the standard of care came from Harms, who believed the construction of the trusses was consistent with the applicable standard. The court concluded, "Other than that opinion, and [Reinke's] opinion that the trusses were 'adequately' braced, there is only speculation." The court cited to *Topil v. Hub Hall Co.*, 230 Neb. 151, 430 N.W.2d 306 (1988), and *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998), with regard to the absence of expert testimony to establish the appropriate standard of care to prove a breach of duty. The district court concluded there was no opinion on the applicable standard of care, and it determined Buresh offered no evidence that "the manner in which the trusses were braced, or the absence of sheeting, was a cause of the collapse of the trusses. [Buresh] merely speculates that the collapse was due to high winds." Therefore, the court determined there was no genuine issue of material fact as to whether Reinke was negligent in bracing or constructing the trusses, as there was no evidence to support that allegation. Nor was there any evidence that the manner in which the trusses were braced or constructed was a cause of the collapse. The district court granted Reinke's motion for summary judgment and dismissed Buresh's complaint.

On January 17, 2019, Buresh filed a motion to alter or amend the order sustaining summary judgment in favor of Reinke. The district court overruled Buresh's motion on February 7, and Buresh timely appealed.

## ASSIGNMENTS OF ERROR

Buresh claims the district court erred by (1) requiring Buresh to present expert testimony to establish the standard of care for a premises liability action against a general contractor in possession and control of the premises, (2) holding that Buresh's evidence was not sufficient to create a genuine issue of material fact as to Reinke's negligence, and (3) requiring Buresh to submit evidence on proximate cause.

## STANDARD OF REVIEW

[1-3] Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wintroub v. Nationstar Mortgage*, 303 Neb. 15, 927 N.W.2d 19 (2019). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.* In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

[4-6] A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* When the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy.

*Id.* Where reasonable minds could draw different conclusions from the facts presented, such presents a triable issue of material fact. *Id.*

We begin with Buresh's assigned error relating to the necessity of an expert witness to overcome summary judgment for his premises liability claim against Reinke as a general contractor. He argues that no expert testimony was necessary because the standard of care for a general contractor "was to use ordinary care to furnish a safe work place for its workers." Brief for appellant at 9. Buresh's argument has merit when applying premises liability principles to the evidence presented at the summary judgment hearing.

[7] In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor. *Thomas v. Kiewit Bldg. Group*, 25 Neb. App. 818, 914 N.W.2d 456 (2018).

[8-10] The Nebraska Supreme Court has recognized that a general contractor in possession and control of the premises has a duty to keep the premises in such condition that they afford a reasonably safe place to work for persons working on or otherwise rightfully on the premises. *Id*. Duty is a question of whether a defendant is under any obligation for the benefit of a particular plaintiff; in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. *Bargmann v. Soll*

*Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998). The question of whether a duty exists at all is a question of law. *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 262 Neb. 66, 628 N.W.2d 697 (2001).

[11] Buresh and Reinke do not dispute that Reinke owed a duty to Buresh. Rather, they disagree about the standard of care that Reinke owed under the particular circumstances of this case. In other words, they dispute whether there was sufficient evidence to establish that Reinke breached his duty to provide Buresh a safe place to work. Reinke moved for summary judgment on the ground that Buresh could not prove that Reinke breached the standard of care applicable to Reinke, which Reinke claimed was the standard of care applicable to framing carpenters because Reinke and Harms "framed the building in question." Brief for appellee at 8. Reinke cites to *Cingle v. State*, 277 Neb. 957, 766 N.W.2d 381 (2009), for the proposition that when allegedly negligent conduct involves specialized knowledge, skill, or training, expert testimony may be helpful or even necessary to a determination of what the standard of care requires under particular circumstances.

[12] It is true that once a court determines that a duty is owed by one party to another, it becomes necessary to define the scope and extent of the duty. See *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch., supra*. In other words, the standard of care must be ascertained. See *id.* That standard is typically general and objective and is often stated as the reasonably prudent person standard, or some variation thereof; i.e., what a reasonable person of ordinary prudence would have done in the same or similar circumstances. *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch., supra*.

[13] When considering the reasonably prudent person standard of care in a premises liability case, several factors relate to whether a possessor has breached a duty to use reasonable care. These include (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the

premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection. *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012).

[14-17] The Nebraska Supreme Court abolished the distinction between invitees and licensees in premises liability cases in *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), holding that whether a possessor of land has breached a duty to use reasonable care to protect lawful visitors is determined under the same test for both licensees and invitees, "which includes independent contractors." *Downey v. Western Comm. College Area*, 282 Neb. at 979, 808 N.W.2d at 848. An independent contractor is a business invitee, to whom a possessor owes a duty to protect against dangers it either knows of or could have discovered with reasonable care. *Id.* But a possessor of property is not liable for injury to an independent contractor's employee caused by a dangerous condition that arose out of the contractor's work, as distinguished from a condition of the property or a structure on the property. *Id.* A general contractor in control of the premises where work performance under a contract with the owner is being carried out owes a duty to persons rightfully on the premises to keep the premises in a reasonably safe condition while the contract is in the course of performance. *Dellinger v. Omaha Pub. Power Dist.*, 9 Neb. App. 307, 611 N.W.2d 132 (2000).

[18] The Nebraska Supreme Court has held that a general contractor in possession and control of the premises is only liable when the subcontractor's employee is injured because the workplace premises were not safe. *Thomas v. Kiewit Bldg. Group*, 25 Neb. App. 818, 914 N.W.2d 456 (2018). It is not

liable when an employee is injured due to specific actions or inactions involved in the construction process. *Id*.

In the present matter, the district court appears to have considered the case under a theory of vicarious liability rather than premises liability; in other words, the district court appears to have focused on whether Reinke could be held liable for defects that arose on the premises through the negligence of Harms or Reinke in constructing and installing the trusses. As a result, the district court found that a higher standard of care was applicable to Reinke. The district court found that Buresh failed to produce any evidence as to the applicable standard of care for "carpenters or framers constructing and bracing trusses in a building" and that the "only evidence regarding the standard of care [was] from Harms who believe[d] the construction of the trusses was consistent with the applicable standard." The district court concluded that other than Harms' and Reinke's testimony (as stated in their depositions) that the trusses were adequately braced, there was "only speculation." Referring to *Topil v. Hub Hall Co.*, 230 Neb. 151, 430 N.W.2d 306 (1988), and *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998), the district court suggested expert testimony was necessary to prove the standard of care in this case. It found that Reinke's "speculative answers" in his deposition and Buresh's "observation on the timing of sheeting" (stated in his affidavit) offered "no opinion" on the applicable standard of care. The district court did not consider the reasonably prudent person standard of care associated with a premises liability claim, as discussed earlier.

On appeal, Reinke agrees with the district court's determination that expert testimony was needed to establish "the applicable standard of care for carpenters or framers constructing and bracing trusses in a building." Brief for appellee at 9. However, Buresh disagrees that the standard of care applicable to Reinke was that of a framing carpenter. Buresh argues that the applicable standard of care was that of a general contractor

in control of the premises, or a duty to "use ordinary care to furnish a safe work place for its workers." Brief for appellant at 9. We agree with Buresh. A premises liability claim is not grounded upon proof of negligent construction; rather, the consideration is whether the premises were safe. Here, the question is whether Reinke exercised ordinary and reasonable care to avoid injuries to subcontractors working on the premises given Reinke's own acknowledgment that only 60 percent of the roof trusses "were up," that he and his brother "looked at the bracing" the day before the accident because it was "extremely windy," and that he was "probably" sure he "added some to it."

Even assuming the roof trusses were properly constructed, installed, and secured, there is a fact question as to whether Reinke reasonably provided a safe workplace given the conditions known to him. Reinke acknowledged that it was on his mind that the roof trusses might collapse. He and his brother looked at the bracing the day before the accident, because it was extremely windy. Reinke also said he "probably" could have put up more bracing to prevent what happened. Reinke believed the accident happened because of high wind. However, Harms denied that he could recall any other time when trusses collapsed because of high wind. Nevertheless, given Reinke's acknowledgments, there is a fact question as to whether Reinke exercised ordinary and reasonable care to maintain a safe workplace by requiring subcontractors to report to the site under the extreme wind conditions (given his own inspection, actions, and concerns the day preceding the accident).

Viewing the evidence in a light most favorable to Buresh and giving Buresh the benefit of all reasonable inferences deducible from the evidence, we conclude the evidence was sufficient to create a question for the jury as to Reinke's liability. A jury could find that (1) Reinke knew of the "condition"—Reinke and his brother were at the site the day before the accident and "looked at the bracing," Reinke was

"probably" sure he "added some to it," and the bracing was "inadequate for maybe the winds that blew, but I don't — I can't say that for sure," thus acknowledging the possibility of a present inadequate condition; (2) Reinke should have realized the condition involved an unreasonable risk of harm to a lawful visitor on the premises—Reinke acknowledged he could have "put up more bracing," which was his responsibility, and it was in the back of his mind that the framework could collapse and fall into the basement; (3) Reinke should have expected that Buresh would either not discover or realize the danger or would fail to protect himself against the danger—Buresh claimed he previously voiced concern to Reinke about working in "extremely windy" conditions but Reinke denied having that discussion; (4) Reinke failed to use reasonable care to protect Buresh against the danger—Reinke either failed to further brace the trusses adequately or alternatively should not have required Buresh to work on an "extremely windy" day given Reinke's concerns about the trusses the day before; and (5) the condition was the proximate cause of damage to Buresh—the roof trusses collapsed causing injury to Buresh. See *Thomas v. Kiewit Bldg. Group*, 25 Neb. App. 818, 914 N.W.2d 456 (2018) (setting forth elements for premises liability).

Further, in considering the reasonableness of Reinke's actions, there is sufficient evidence for a jury to consider the foreseeability or possibility of the harm, the reasonableness of Reinke's inspection or warning, the opportunity for Reinke to repair or correct the condition or give a warning, and the burden on Reinke in terms of inconvenience or cost in providing adequate protection. See *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012) (setting forth factors relating to whether possessor of premises has breached duty to use reasonable care).

As previously noted, the district court did not consider the facts under a premises liability theory; rather, the court appeared to focus on whether Reinke was liable or vicariously

liable for allegedly defective construction or installation of the trusses. However, under a premises liability claim, a general contractor is only liable when the subcontractor's employee is injured because the workplace premises were not safe; it is not liable when an employee is injured due to specific actions or inactions involved in the construction process unless certain exceptions are met. See *Thomas v. Kiewit Bldg. Group, supra*. Therefore, the focus in the present matter should be on whether Reinke should have been aware the workplace premises were not safe, rather than on whether the trusses were improperly constructed or installed.

In considering whether Reinke, as the general contractor, should have known the workplace premises were potentially unsafe, we need not consider whether expert testimony was required at the summary judgment stage of the proceedings in light of Reinke's own testimony regarding his concerns and actions the day preceding the accident, as previously set forth. For the sake of completeness, we note that some claims of negligence under a premises liability theory against a general contractor have not depended upon expert testimony because the analyses did not ultimately concern whether the worksite was unsafe. See, *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014) (any breach of general contractor's duty to provide safe place to work did not cause subcontractor's employee's death from fall off collapsed roof decking where injury was due to specific actions or inactions involved in construction process—employee was not wearing personal protection equipment required to be worn where fall took place); *Eastlick v. Lueder Constr. Co.*, 274 Neb. 467, 741 N.W.2d 628 (2007) (employee was injured when he removed brace on scaffolding in incorrect manner, and scaffolding was not owned, erected, or maintained by general contractor).

Expert testimony in cases involving slip-and-fall injuries has not been required to prove general contractors in possession and control of premises failed to provide reasonably safe workplaces. See, *Thomas v. Kiewit Bldg. Group*, 25 Neb. App.

818, 914 N.W.2d 456 (2018) (plaintiff presented sufficient evidence to create question of fact as to general contractor's premises liability for plaintiff's slip-and-fall injury; record contained conflicting testimony from plaintiff and his coworker versus defendant's safety supervisor about whether sand on dry concrete was hazardous); *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981) (plaintiff slipped on bolt which was half covered in ice on stairs and fell; no expert testimony needed to show general contractor failed to keep reasonably safe workplace for workers where icy condition of steps had existed for prolonged time and where debris was frequently or always present on steps, making footing even more hazardous).

In a case involving a subcontractor's employee's fall through an opening in a floor deck and impalement on three 1-foot, vertical reinforcing steel rods set in concrete on the floor directly below a duct opening, the offer of expert witness testimony was at least recognized as relevant evidence. See *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972) (expert qualified by 30 years in construction safety work who opined about reasonable conduct regarding floor hole or opening—even though general contractor was not bound by any code-directed standard of conduct—gave relevant evidence as to reasonableness of general contractor's conduct).

In the present case, expert evidence may ultimately be necessary to succeed in persuading a jury regarding whether or not Reinke exercised ordinary and reasonable care in maintaining safe workplace premises given the state of the partially completed roof trusses and the windy conditions present on the day of the accident. However, at this point in the proceeding, Reinke's own testimony describing his concerns and actions the day preceding the accident is sufficient to create material issues of fact precluding summary judgment in his favor on Buresh's premises liability claim.

## CONCLUSION

We reverse the district court's order granting summary judgment in favor of Reinke and remand the cause for further proceedings on Buresh's premises liability claim against Reinke.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.