IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

LUETH V. LASHLEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DANA LUETH AND JEFFREY LUETH, APPELLANTS,

V.

NORMA LASHLEY AND LASHLEY PROPERTIES, LLC, APPELLEES.

Filed October 4, 2022.    No. A-21-747.

Appeal from the District Court for Frontier County: DAVID W. URBOM, Judge. Affirmed.

James B. Luers and Robert L. Bryant, of Cada, Cada & Jewson, for appellants.

Craig F. Martin and Callie Kanthack, of Lamson, Dugan & Murray, L.L.P., for appellees.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Dana Lueth and Jeffrey Lueth (collectively referred to as "the Lueths") filed an action against Norma Lashley and Lashley Properties LLC ("Lashley") in the district court for Frontier County alleging claims for breach of contract and promissory estoppel. Lashley filed an answer and counterclaim denying the Lueths' claims and claiming that the Lueths had been unjustly enriched. Following a bench trial, the district court entered an order finding in favor of Lashley with respect to the Lueths' claims for breach of contract and promissory estoppel. The district court found in favor of the Lueths with respect to the counterclaim for unjust enrichment. The Lueths appeal from the decision of the district court. Upon our review of the record, we affirm.

## BACKGROUND

On December 6, 2019, the Lueths filed a complaint against Norma, who is Dana's mother, and Lashley Properties, which is owned by Norma, asserting two causes of action, breach of

- 1 -

contract and promissory estoppel. Both of the Lueths' claims relate to real property which is owned by Lashley. In their complaint, the Lueths specifically asserted that in 2014 they were advised by Norma that they would eventually obtain ownership of the real property, if they began paying all the expenses with respect thereto, including insurance, taxes, loan payments, and other costs. They further asserted that, beginning in 2014, they paid the required expenses each year. The Lueths also asserted that Norma purchased additional real property with the understanding that the Lueths would pay all the expenses associated with this property as well. In return, the Lueths would be given the property at the time of Norma's death. We note that during the period of these alleged agreements, the Lueths utilized the Lashley properties to operate their own farming and cattle operations, and at times sublet certain tracts of land.

With respect to their claim for breach of contract, the Lueths attached a copy of an agreement the parties memorialized in 2018 (the 2018 Agreement) regarding certain real property owned by Lashley. As we will discuss in greater detail below, the 2018 Agreement was a memorialization of a verbal agreement between the parties that was agreed to in 2016. The entirety of the 2018 Agreement is as follows:

> This agreement is between Lashley Properties, LLC., with Norma Lashley as owner of said property and Dana Lueth, daughter of Norma Lashley. Upon Norma Lashley's death Lashley Properties, LLC. will be given to Dana Lueth and all value associated with Lashley Properties, LLC as declared in the trust and will of Norma Lashley. Dana Lueth, owner of Lueth Land and Cattle, LLC currently covers all payments and expenses associated with Lashley Properties, LLC.

The Lueths asserted that they received a notice of termination of their "lease" of the real property on August 26, 2019, requiring them to vacate the property by February 29, 2020. In their complaint, the Lueths alleged that the notice of termination and the demand that they vacate the property constituted a breach of the 2018 Agreement. They asserted that the breach of contract proximately damaged them in an amount greater than $600,000.

With respect to their claim for promissory estoppel, the Lueths alleged that Norma's promise to eventually transfer the deeds to the properties to the Lueths in exchange for the Lueths continuing to farm the property and pay all of the farming expenses was relied upon by all parties. They alleged that the promise to deed the properties was reasonably expected to induce the Lueths to pay all expenses associated with the properties. The Lueths asserted that their reliance on Norma's promise resulted in damages in excess of $600,000.

Lashley filed an answer generally denying the allegations in the Lueths' complaint. The defendants also filed a counterclaim which alleged that the Lueths were unjustly enriched because they had the full use and benefits of the property while at the same time failing to make reasonable payment of the expenses associated with the properties or to pay timely rent.

A bench trial was held on June 8 and 9, 2021. Norma and the Lueths testified. The following evidence was adduced.

Norma was called initially as a witness by the Lueths. She later testified in her own case-in-chief. We summarize her entire testimony here. Norma and her husband, Bud Lashley, co-owned Lashley Properties until 2015 when Bud passed away. Norma has been the sole owner of Lashley Properties since that time.

Norma entered into a verbal agreement with the Lueths in 2005 where they would pay $20,000 per year in rent for the exclusive use of pasture land owned by Lashley for their cattle operation. The verbal agreement was reduced to writing in 2008 (the 2008 Agreement). The entirety of the 2008 Agreement is as follows:

> This agreement between Lashley Properties, LLC and Jeff and Dana Lueth will apply 80% of the yearly payment of $20,000.00 to the future purchase of the farm ground owned by Lashley Properties LLC. The addition [sic] 20% will be interest on the payment. This payment is due and payable each year from the inception of the rental agreement until such time as the agreement is cancelled by either party. A balance of amounts will be kept for purchase of farm ground to be applies [sic] when ground is to be sold, or at the time of death of the owners of Lashley Properties LLC.

Norma testified that from 2008 to 2010, the Lueths paid $20,000 per year in rent for the use of the pastures. Payment records received into evidence indicated that the Lueths did not make any rental payment in 2011. In addition, the payment records indicated that the Lueths paid only $10,000 in 2012. Norma explained that she did not attempt to evict the Lueths from the property despite not receiving the full amount of rent because she was attempting to help her children be successful in their cattle operation. She also acknowledged that in an effort to help them, she had previously told the Lueths that they did not need to make the full rental payments if they were unable to do so.

In 2013, the Lueths began farming crop land owned by Lashley. This land appears to have included only irrigated land initially, but may have also included dry land crops. The irrigated land included a center pivot system. Pursuant to an oral agreement between the parties, the Lueths were to pay $31,255.50 per year to rent the crop land in addition to the $20,000 in rent they were to pay annually for the pastures. In 2013, the Lueths paid $31,255.50 in rent for the crop land but paid only $17,000 in rent for the pastures. Similarly, in 2014, the Lueths paid $31,255.50 in rent for the crop land but did not make any rental payment toward the pastures. In 2015, the Lueths only paid a total of $15,000 in rent for all of the land rented. They did receive the proceeds of their cattle and farming operations. Norma testified that despite not receiving adequate payments to meet her expenses with respect to the land, she nonetheless wished to help her children be ultimately successful. Therefore, she did not terminate their agreements.

In 2014, Norma initiated a meeting to discuss her estate plan with her family. As is relevant to the present appeal, at that meeting Norma informed the Lueths of her plan for the Lueths to receive all of the properties owned by Lashley when Norma died.

Norma testified that, in late 2015, the Lueths approached her with an alternative plan with respect to their financial arrangements. She agreed to their proposal. Under the new plan, the Lueths would take over the complete operation of two tracts of land, known as the "Home Place" and the "Holly Place" where the property they had been renting was located. Instead of paying rent, the Lueths would pay all expenses associated with their cattle and farm operations on this land. These expenses included the costs of operation along with paying all indebtedness, taxes, and insurance associated with the land. The Lueths would also receive all income that they generated, whether from crops, cattle, or subleasing the property. Norma would thus be relieved of any financial obligations with respect to the land. In 2016 Norma and the Lueths attended an

auction of a tract of land known as the "Nelson Place." According to Norma, when she saw that the bidding was low, she asked Jeff if he would want to expand their operation to this land if she would buy it. Jeff responded that he would like her to purchase the Nelson Place. The parties agreed that the Nelson Place would be operated by the Lueths under the same terms as the other two tracts of land.

Despite this agreement, Norma testified that the Lueths did not pay all of the required expenses for the properties, however, she did acknowledge that they did pay the majority of the expenses. According to Norma, the Lueths did not pay all of the maintenance expenses and paid only a small portion of property taxes due. They did pay for insurance and made improvements to the property at their own expense. According to a written history of the financial transactions taken received from Dana's accounting software, there were two "land" payments made by the Lueths for Holly Place in the amount of approximately $22,000 each in February and December 2017. With respect to the Nelson Place, there were two loan payments, one in June 2017 and one in May 2018, in the amount of $68,503.67 each.

In May 2017, Norma signed a hypothecation agreement with First Central Bank which pledged an irrigated tract of crop land on the Home Place as security for an operating loan to be given to the Lueths for the 2017 crop year. She signed another hypothecation agreement in March 2018, which again pledged the same tract of irrigated land as security for a 2018 operating loan. In addition, at the bank's request, the parties prepared and signed the 2018 Agreement which memorialized their 2016 oral agreement that Dana would pay all of the expenses associated with real estate owned by Lashley and that Norma would leave all of the real estate owned by Lashley to Dana in her will.

However, in August 2018, Norma learned that Dana had embezzled more than $200,000 from BSB Construction, a company that Norma owned and the Lueths worked for. Both were dismissed from their positions with the company. Norma then informed the Lueths that because Dana had embezzled the money, she had decided to change her estate plan to no longer devise the Lashley properties to them. Eventually, she gave notice to the Lueths to leave the property.

Norma testified that she later gave permission to the Lueths to continue to use all of the properties owned by Lashley Properties through 2019. Norma testified that she expected the Lueths to continue to pay rent for the use of these properties. However, the Lueths did not make a payment for their use of the land in 2019. Also, in 2019, Norma hired H-D Management to manage all her properties. H-D Management provided a letter to the Lueths asking them to vacate the property or to pay the past due rent. According to this letter, the Lueths owed $159,987.05 in rent, $88,675.40 in land payments, and $84,872.10 in taxes. However, H-D Management deducted $13,560.45 that was owed to the Lueths as a result of an insurance payment for hail damage. Norma testified that this letter was sent without her knowledge. She testified that at the time, the only agreement was that the Lueths would pay farm expenses.

Norma also testified that if reasonable rates for rental had been utilized for the period from 2011 through 2020, the total rents that would have been paid by the Lueths would total $707,421. Her estimation of rental value was based on tables provided by the U.S. Department of Agriculture for Frontier County.

Dana testified that after her marriage to Jeff in 2001, she and Jeff helped with the Lashley's farming operation. She also explained that since 2000, she and Jeff had been paying Norma

$20,000 per year to rent the Holly Place property. Subsequent to the 2008 Agreement, Dana testified that she and Jeff attempted to pay rent to the best of their ability. She also explained that it was her understanding that the 2008 Agreement allowed her to build equity in the real property owned by Lashley Properties for when she and Jeff were able to purchase such property.

Dana acknowledged that she and Jeff were not able to make all of their payments. For instance, in 2013, she acknowledged that she only paid $17,000 of the $20,000 rent due for the Holly Place and made two payments of $15,627.75 for crop rent. In 2014, there were two payments for $15,627.75 each. However, Dana did not believe that there were any other payments owed to Lashley other than the $20,000 that was acknowledged in the 2008 Agreement.

Dana's testimony about the purchase of the Nelson Place differed from Norma's testimony. She disagreed that it was her or Jeff's idea to purchase the Nelson Place. In Dana's opinion, it was Norma's idea to purchase the Nelson Place because of how low the price was. However, she agreed with Norma, that following the purchase of the Nelson Place, she and Jeff agreed to pay all expenses associated with the Nelson Place, the Holly Place, and the Home Place, instead of the rent that they had been paying since 2008.

Dana testified that she sold cattle and crops that were raised and produced, in part, on property owned by Lashley. She testified that since 2015, the proceeds for the sale of cattle raised on Lashley's property totaled $629,164.27. In addition, the total sales of crops grown on that land since 2015 was $936,182.71. Dana also testified that in 2018, the Lueths received a rental payment of $51,706 from a sub-lessee on a portion of the property the Lueths rented from Lashley.

Dana testified that she and Jeff financially struggled throughout the time they rented property from Lashley. She testified that they owed First Central Bank approximately $300,000 for real property and $400,000 for farm equipment. She also testified that they owed First Central Bank $129,000 through an operating note. Dana offered into evidence a shortfall loss note indicating that she and Jeff owed $471,000 to First Central Bank. In April 2021, she received a letter from First Central Bank stating not only that it would no longer loan the Lueths money but it was beginning the process to liquidate their assets. Dana testified that she would not have incurred the large amount of debt from First Central Bank if she did not expect to receive the benefit of the real property upon Norma's death. She also explained that she did not believe that First Central Bank would have loaned her this amount of money without Norma's affirmative promise that she would eventually inherit the real property.

Jeff also testified as to his recollection with respect to the rental agreements with Lashley. He testified that he and Dana paid annual rent pursuant to the 2008 Agreement. He explained that the agreement between the parties was changed in 2016 such that he and Dana began paying all of the expenses associated with the land in lieu of annual rental payments. His recollection of the purchase of the Nelson Place correlated with Dana's recollection.

During his testimony, Jeff presented a list of improvements and projects that he completed on the properties. According to Jeff, the cost for these improvements and projects totaled $48,562.99. He calculated his labor cost based on the amount that he was paid for similar jobs on other land. Jeff also testified that, in some instances, the cost for the projects did not reflect the money that he actually spent on the projects. He conceded that he did not keep track of the time that he spent on these improvements nor did he create the list of projects contemporaneously with completing them.

- 5 -

Don Moore, the president of First Central Bank testified by deposition. As relevant to the issues herein, Moore testified that the bank required Norma to sign the hypothecation agreements in order to provide continued financing to the Lueths. The bank also required the parties to memorialize their agreement with regard to the operation of the Lashley real estate and Norma's intention to leave that real estate to the Lueths before continued financing could occur. The 2018 Agreement satisfied this condition.

The damages sought by the Lueths consisted of the sums they had put into the real estate in the form of rents paid, taxes, insurance, and land payments made combined with the value of improvements made and sweat equity put into the land. The Lueths characterized this total as the "equity" they had invested into the land. They contended that any income they received from their cattle and farm operations should not be offset against this equity. Lashley's counterclaim alleged that the Lueths had been unjustly enriched as the amounts they had paid did not constitute fair and reasonable rent.

On August 30, 2021, the district court entered its order which included specific findings of fact and conclusions of law. The district court found that the Lueths began renting pasture land on Home Place and Holly Place for $20,000 per year pursuant to a verbal agreement which was reduced to writing in the 2008 Agreement. The court found that the Lueths paid the full amount of the rent in 2008, 2009, and 2010, however, they failed to make any rental payments in 2011. In addition, the district court found that the Lueths only paid $10,000 in 2012. The district court next found that the Lueths began renting irrigated land on the Home Place which increased their total rent obligation to $51,225.50 per year, beginning in 2013. Based on this rent for three years, the total amount owed by the Lueths was $153,676.50. The district court found that the Lueths only paid $94,511 during this time.

The court noted that in 2014, Norma informed the Lueths that they would inherit her farm property and that the parties at that time agreed that the Lueths would pay all of the expenses associated with the real property in lieu of paying cash rent. The district court also found that in 2016 the Lueths and Lashley made an agreement where Norma would purchase the Nelson Place and the Lueths would pay all the expenses attributable to the Nelson Place. Upon Norma's death, this tract of land would also be given to the Lueths.

The district court determined that although the Lueths paid some farming expenses in 2016 and 2017, they did not pay any farming expenses after 2017. The court noted that the Lueths suffered significant losses in those years. The court then found that Norma pledged a portion of Lashley real estate to assist the Lueths in obtaining financing in 2017 and 2018 and executed the 2018 Agreement to satisfy the demands of the bank. The court further found that the 2018 Agreement was terminated by Norma after she discovered that Dana had embezzled funds from her company.

The district court explained that the Lueths asserted that Lashley breached both the verbal contract to convey real property to them when she died and the written 2008 Agreement because 80 percent of the annual payments of rent were not returned to them. Then the district court explained:

> The Court finds that the Lueths have failed to present sufficient evidence to support their claims. The evidence does show that [Lashley] as the owner of the LLC, and Dana signed the 2018 Agreement that provided that [Lashley Properties] would be given to Dana as

declared in [Lashley]'s trust and will. The [2018 Agreement] further acknowledges that Dana, as the owner of Lueth Land and Cattle, LLC covers all payments and expenses associated with [Lashley Properties]. The evidence is clear that [the] Lueths failed to pay all expenses. The 2008 Agreement specifically provides that . . . 80% of the annual payments is to be applied to the "future purchase of the farm ground owned by Lashley Properties, LLC." There has been no breach of either the 2008 Agreement or the 2018 Agreement by [Lashley] or [Lashley Properties].

The district court classified the Lueths' promissory estoppel claim as a claim that they relied upon Norma's promise to deed her real property to them upon her death and that they incurred expenses when they relied on that promise. However, the district court found that all the payments made by the Lueths from 2008 to 2015 were rental payments. And the district court further found "that the Lueths have failed to prove, with specificity, any improvements and bills paid by [the] Lueths other than expenses pursuant to the verbal rental agreement to pay all farming expenses associated with the farm real property."

With respect to the counterclaim, the district court found in favor of the Lueths and against Lashley.

The Lueths now appeal to this court.

ASSIGNMENTS OF ERROR

On appeal, the Lueths assign that the district court erred in the following respects: in finding that (1) the 2008 Agreement was still in effect as of the trial date; (2) Lashley had not breached the 2008 Agreement if it was still in effect; (3) Lashley had not breached the 2018 Agreement; (4) the Lueths breached the 2008 Agreement and/or the 2018 Agreement; (5) the Lueths were not entitled to damages pursuant to the 2008 Agreement and/or the 2018 Agreement; (6) the payment of farm expenses by the Lueths was simply in lieu of an agreement to pay rent, and; (7) the Lueths failed to prove damages.

We note that the argument section of the Lueths' brief on appeal does not completely match up with their assignments of error. Their argument is divided into three sections: The first section addresses their claim and the district court's findings regarding breach of contract. This section relates to the first five assignments of error. The second section argues that "the facts of this case give rise to the [Lueths'] claim of promissory estoppel" and asks us to reverse the district court's finding that the Lueths failed to carry their burden of proof on that claim. Brief for appellants at 18. However, the Lueths did not assign error to this issue in their brief. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014). With regard to their sixth assignment of error, the Lueths assign that the district court erred in finding that their payment of farm expenses was in lieu of an agreement to pay rent. To the degree they argue this point, their argument does little more than to restate their assignment of error. As such, we do not address this assignment of error. See *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

Accordingly, the assignments of error that we do address are with respect to the purported breach of both the 2008 and 2018 Agreements and whether the Lueths were entitled to recover damages.

## STANDARD OF REVIEW

A suit for damages arising from breach of contract presents an action at law. *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018). In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hooper v. Freedom Fin. Grp., Inc.*, 280 Neb. 111, 784 N.W.2d 437 (2010). An appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error. *Id.* Similarly, the trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Id.* In reviewing a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Bloedorn Lumber Co. v. Nielson, supra.* However, regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Id.*

## ANALYSIS

*Breach of 2008 Agreement.*

Although we have recounted the facts in our background discussion about the 2008 Agreement, the Lueths did not assert in their complaint that Lashley breached this agreement. In fact, the complaint does not mention the 2008 Agreement. Rather, their cause of action for breach of contract is wholly based on an oral agreement they allege to have begun "in or about 2014" which was later memorialized in the 2018 Agreement.

The purpose of pleadings is to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pleaded. *Thomas v. Kiewit Building Group*, 25 Neb. App. 818, 914 N.W.2d 456 (2018). A pleading serves to eliminate from consideration those contentions which have no legal significance and to guide the parties and the trial court in the conduct of cases. See *id.* Similarly, the pleadings guide an appellate court's review of the lower court's judgment. An appellate court is obliged to dispose of a case on the basis of the theory presented by the pleadings on which the case was tried. *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

At trial, both parties presented significant evidence on events that took place prior to 2014. This included evidence of the verbal agreements the parties followed prior to signing the 2008 Agreement. This evidence was important in that it provided context for the testimony regarding Norma's estate plan over the years. The evidence demonstrated that the parties over the period of many years had a business relationship wherein the Lueths rented land from Lashley and on many occasions, failed to pay the rent required. Nonetheless, Norma did not demand full payment based on her desire to help the Lueths succeed in their cattle and farming operations. This evidence sets the scene for the later evidence regarding Norma's plan to give all of the land owned by Lashley to the Lueths upon her death and the subsequent decision to discontinue rental payments but rather have the Lueths pay all expenses associated with the real estate. It also provides context for the

Lueths' continued failure to pay their obligation. As such, we recognize the significance of the evidence as it relates to the 2008 Agreement. While it may not have been necessary for the district court to make an explicit determination of whether Norma and Lashley breached that agreement, the course of dealing between the parties was relevant. Therefore, for purposes of our review, we focus on the findings of the court as it relates to the later agreements. Since no breach of the 2008 Agreement was pled, we need not review whether the burden of proof for such a claim was met.

*Breach of 2018 Agreement.*

The Lueths' allegation of breach of contract in the operative pleadings was focused on the verbal agreement made between Norma and the Lueths which began in 2014 when Norma initiated her estate plan. At trial, the evidence established that while Norma communicated her estate plan in 2014, she and Jeff began discussing Jeff's proposal for the Lueths to take over paying all expenses in 2015. The parties shifted to that arrangement in 2016. This verbal agreement was later memorialized in the 2018 Agreement. As such, we consider the 2018 Agreement to relate back to the verbal agreement made by the parties. In our consideration of a breach of contract, we consider the actions of the parties from the time the verbal agreement was made until the contract was terminated.

To recover in a breach of contract action, a plaintiff must prove that a defendant made a promise, breached the promise, and caused the plaintiff damage, and that any conditions precedent were satisfied. *Phipps v. Skyview Farms*, 259 Neb. 492, 610 N.W.2d 723 (2000). A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. *Valley Boys, Inc. v. Am. Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020). It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. *Id.*

To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract. *RM Campbell Indus. v. Midwest Renewable Energy, LLC*, 294 Neb. 326, 886 N.W.2d 240 (2016). To establish substantial performance under a contract any deviations from the contract must be relatively minor and unimportant. *Id.*

A material breach will excuse the non-breaching party from its performance of the contract. *Siouxland Ethanol, LLC v. Sebade Bros. LLC*, 290 Neb. 230, 859 N.W.2d 586 (2015). A material breach is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract. *Id.* Whether or not a breach is material and important is a question of degree which must be answered by weighing the consequences of the breach in light of the actual custom of persons in the performance of contracts similar to the one involved in the specific case. *Id.* Although whether a material breach has occurred is commonly a fact question, in some circumstances, a court may determine the question as a matter of law. *Id.*

Although we acknowledge that the 2018 Agreement may not be an enforceable contract due to lack of consideration, for purposes of this appeal, we assume that the 2018 Agreement was an enforceable contract. The district court found that the Lueths did not pay all of the expenses on the property owned by Lashley as was required in the agreement. As such, Norma and Lashley were not obligated to perform and their withdrawal from the agreement did not constitute a breach.

Recognizing our standard of review and giving due deference to the findings of the district court we cannot find that the decision of the district court is clearly erroneous.

It is undisputed that beginning in 2016, the Lueths were required to pay all the expenses associated with the tracts of real estate owned by Lashley. In exchange they would receive the real estate upon Norma's death. Although the Lueths concede that they did not pay all of the expenses associated with the properties, they contend that they substantially performed under the contract. As such, any breach on their part was not material. We disagree.

The Lueths received the benefit of the use of the properties under the agreement. All proceeds from crops, cattle, and subleases went to them. However, between 2016 and the filing of their complaint, they did not make all of the loan payments, tax payments, or insurance payments as required by the agreement. While Norma continued to cover these shortfalls as she had under the prior rental agreements, her forbearance ran out when she learned that Dana had been embezzling money from another company Norma owned. Norma was not required to forever forbear. The Lueths' failure to pay expenses as agreed constituted a material breach. As such, Lashley was excused from performance under the contract. The district court did not err in finding that Lashley did not breach the contract.

*Damages.*

The remaining assignment of error and argument focuses on the measure of damages that the Lueths contend should be recovered. However, because we found that Lashley's performance of the agreement was excused, we need not address this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Coop.*, 286 Neb. 49, 835 N.W.2d 30 (2013).

CONCLUSION

For the reasons set forth above, we affirm the decision of the district court finding that Norma and Lashley did not breach the contract with the Lueths. Therefore, the Lueths were not entitled to recover on their complaint.

AFFIRMED.